**Randall Haige JAMAIL, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 941–86.**

Court of Criminal Appeals of Texas, En Banc.

March 21, 1990.

J. Gary Trichter, Edward A. Mallett, Gene L. Locke, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty., and Winston E. Cochran, Jr., Shirley Cornelius, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON THE STATE'S PETITION FOR DISCRETIONARY REVIEW

### PER CURIAM.*

Appellant was convicted by a jury for the offense of driving while intoxicated. Punishment was assessed at ninety days confinement in jail, probated for two years, and a fine of $1,000.00. The Fourteenth Court of Appeals reversed the conviction, holding that the trial court improperly denied the appellant's motion to suppress the results of his blood test and the videotape recording of appellant at the police station shortly after his arrest. *Jamail v. State,* 713 S.W.2d 776 (Tex.App.—Houston [14 Dist.] 1986).

We granted the State's petition for discretionary review to decide whether the videotape recording and the results of the blood test were fruits of an unlawful custodial interrogation.

On June 17, 1984, the appellant was arrested by two Houston police officers for suspicion of driving while intoxicated. After performing field sobriety tests, the officers transported appellant to the police station. Although the record is unclear, apparently upon arriving at the police station the appellant was given his *Miranda* warnings. He then requested that he be able to call his attorney. This request was denied, but he was informed by Officer Mock that he could make such a call once inside the videotape room. Appellant was also advised that if he chose to make the phone call in the videotape room at least one police officer would be in the room during that time and the audio and video equipment would remain on.[1]

Once inside the videotape room appellant was again given his *Miranda* warnings and then required to perform several motor skill exercises, and requested to read aloud a paragraph of material to test his mental faculties. This was recorded on videotape. After the dexterity tests were completed, Officer Mock again repeated the *Miranda* warnings and stated "You have a right to have a lawyer present to advise you prior to and during these questions." Appellant immediately responded: "[I]f I feel like a question is infringing on my rights, I'll say so...."[2]

During the interrogation the police officer asked the appellant about several aspects of the offense which were answered by the appellant without any objection or a request for an attorney to be present dur-

---

* This opinion was prepared by Judge M.P. Duncan, III, prior to his death and is adopted as the opinion of the Court.

1. The Houston Police Department's policy of denying a DWI suspect a *private* phone call is not before this Court.

2. We adopt many of the facts from the court of appeals' opinion.

ing the questioning. When asked whether he had been drinking the appellant responded: "Now it's time for me to call my lawyer." The following colloquy then took place:

> Officer Mock: Okay. Do you want to call him [an attorney] now or ...?
>
> Appellant: Sure, sure. Unless you have another question that you'd like to ask me.
>
> Officer Mock: Well, I have more questions. You refuse to answer questions.
>
> Appellant: I would like to answer that question, but, uh, if you have another question I will answer it.
>
> Officer Mock: Okay, you refuse to answer questions?
>
> Appellant: Only because I'm not sure how this ...
>
> Officer Mock: Yeah, yeah. Well, I have these questions I need to ask you.
>
> Appellant: Yeah, I know, I know. And I'll go on answering them, but those questions that I ...
>
> Officer Mock: Let me go ahead and ask them, and you tell me whether or not you want to answer them, okay? Are you under the influence of alcohol now?

Appellant chose to answer that question in the negative and then answered Mock's remaining questions. Officer Mock then gave appellant the statutory warnings pursuant to Art. 6701*l*–5, § 2(b), V.A.C.S.[3] Immediately after the appellant was given the statutory warnings he was requested to submit to a breath test to determine his blood/alcohol concentration. Appellant emphatically declined to submit to this test but did agree to submit to a blood test. The .19 blood-alcohol test results and the videotape were introduced into evidence at appellant's trial.

The court of appeals found that the trial court erred in failing to suppress the videotape and blood-alcohol test result, as both were the result of the wrongful custodial interrogation of appellant. The court relied upon unassigned error and decided that the continuation of the custodial interrogation, after the appellant had affirmatively requested counsel, violated the safeguards established by *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981).

In its opinion, the court of appeals viewed the appellant's initial request to call an attorney an absolute assertion for the assistance of counsel that could not be overcome by other events. The court of appeals curiously observed that the "request for consent to a breath/alcohol test was the functional equivalent of continued custodial interrogation *after* the right to counsel attached and right to counsel was denied." *Jamail v. State, supra,* at 780.

Consistent with the court of appeals' opinion, the appellant asserts that the videotape and the resultant blood test results should have been suppressed by the trial court as he was denied the right to counsel under the Sixth Amendment to the United States Constitution and the right to counsel provision of Art. I, § 10 of the Texas Constitution. He further argues that he was denied his right to have the presence of counsel during in-custody interrogation in violation of the dictates of the Fifth Amendment to the United States Constitution and the right to be free from compelled self-incrimination as guaranteed by Art. I, § 10 of the Texas Constitution.

In addition, he contends that the confusion or mixing doctrine as set out in footnote 17 of Judge Campbell's opinion in *McCambridge v. State,* 712 S.W.2d 499, 506 (Tex.Cr.App.1986), is applicable.[4] In

---

**3.** Article 6701*l*–5, § 2(b), V.A.C.S., provides:

Before requesting a person to give a specimen, the officer shall inform the person orally and in writing that if the person refuses to give the specimen, that refusal may be admissible in a subsequent prosecution, and that person's license, permit, or privilege to operate a motor vehicle will be automatically sus-

pended for 90 days after the date of adjournment of the hearing provided for in Subsection (f) of this section, whether or not the person is subsequently prosecuted as a result of the arrest ...

**4.** "17. A different question might be presented if the police officer, in ignoring appellant's request for counsel under *Miranda,* had mixed

other words, the appellant claims that in refusing appellant's request for counsel pursuant to *Miranda* and its progeny the police officers mixed their request for breath/blood samples with questions that amounted to custodial interrogation ultimately resulting in appellant's confusion when viewed in conjunction with the *Miranda* assurances.

While the court of appeals did not decide the issue presented under the right to counsel provisions of the Federal and State constitutions, it did agree that the appellant was improperly denied the presence of counsel during his in-custody interrogation and that the police officers mixed their request for a breath/blood sample with what amounted to wrongful custodial interrogation.[5]

The record reveals that the appellant requested that he be allowed to call an attorney twice. His first request came shortly after he was transported to the police station and immediately prior to entering the videotape room. As previously noted, this request was refused by one of the arresting officers, who, however, commented that appellant would have such an opportunity once inside the videotape room. Appellant's second request for an attorney came while he was in the videotape room during actual in-custody interrogation, when he responded to the question as to whether he had been drinking by stating:

"Now it's time for me to call my lawyer." We will treat each request separately.

■ Relative to the appellant's initial request to call an attorney, it is imperative to note that appellant at that time had no right to counsel under the right to counsel provisions of either the Federal or Texas constitutions. *Kirby v. Illinois,* 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972); *Forte v. State,* 759 S.W.2d 128 (Tex.Cr. App.1988). However, in an abundance of caution we will indulge in the assumption that this initial plea to call an attorney was tantamount to a request to have counsel present prior to or during any custodial interrogation. His request was clear, and unequivocal and certainly sufficiently expressed appellant's desire to deal with the police officers only through counsel. See *Smith v. Illinois, supra.* However, at the time of this request the appellant was not being subjected to interrogation nor did the officer make an attempt to question appellant, rather he was simply advised that his request would be honored once he entered the videotape room.[6]

After entering the videotape room the appellant was again given his *Miranda* warnings. He was then given the opportunity to call an attorney, which he expressly declined. However, the appellant did request that the officers turn the video equipment off, which they refused to do. Despite that, the appellant told the officers that he wanted to cooperate with them in every way "but I don't believe that a lawyer is going to be able to come to the video

---

his request for a breath sample with questions that amounted to interrogation. In the absence of such a probable *Miranda* violation, we need not decide under what circumstances a suspect's consent to provide a breath sample is the fruit of an illegal interrogation."

**5.** In the court of appeals it was the appellant's contention that the blood specimen, blood test results, videotape, and all observations made by the arresting officers were derived from an illegal in-custody interrogation. The court of appeals was of the belief that the appellant did not raise the issue that the custodial interrogation became illegal due to the continued questioning of appellant after he had affirmatively requested counsel and therefore relied upon *Perry v. State,* 703 S.W.2d 668 (Tex.Cr.App.1986), to dispose of appellant's appeal as unassigned error. We express no opinion as to whether the appellant

sufficiently raised in the court of appeals the error pursuant to *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1977) and *Smith v. Illinois,* 469 U.S. 91, 105 S.Ct. 490, 83 L.Ed.2d 488 (1984).

**6.** The court of appeals questioned the continued viability of local law enforcement officers permitting those accused of the offense of DWI to call an attorney and then be forced to carry on a conversation with such attorney while the video-audio equipment is on, thereby recording both the audio and video of the accused. Although this may become an issue in the future it is not now before this Court. We observe that at no stage of the process did appellant contact an attorney where he was required to engage in a conversation that was being recorded by officers of the Houston Police Department.

room and help me." [7] Appellant attempted to give the reasons for failing to contact an attorney but was unsuccessful in completing the explanation.

The appellant testified at the pretrial motion to suppress hearing and explained that he did not want to contact a lawyer at that time because he was being filmed and "I was scared that if I wanted a lawyer or asked for a lawyer while I was on video tape, that it would look like I was guilty, or it might appear that I thought I was guilty." Although appellant may have thought he was faced with the proverbial Hobson's choice, he nevertheless consciously and voluntarily made the decision to forego contacting an attorney at that time.

We therefore conclude that the appellant's behavior and comments constituted a voluntary, knowing and intelligent relinquishment and abandonment of his constitutional right to counsel under the Fifth and Fourteenth Amendments to the Federal Constitution as well as the right to counsel required under the self-incrimination provision of the Texas Constitution. *Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938); *Oregon v. Bradshaw*, 462 U.S. 1039, 103 S.Ct. 2830, 77 L.Ed.2d 405 (1983); *North Carolina v. Butler*, 441 U.S. 369, 99 S.Ct. 1755, 60 L.Ed.2d 286 (1979).

Relative to this particular invocation of counsel, the record further reveals that although the appellant did not initiate further communications with the police officers, at no time did the officers question or attempt to question appellant nor had they in any manner transgressed to the point of over-reaching. Based upon the videotape introduced by the State the trial court could have easily reached the conclusion that appellant understood the *Miranda* warnings given to appellant upon entering the videotape room. Viewing the videotape we cannot find that the police officers made any promises or threats which were likely to induce appellant to talk. Having been properly advised of his constitutional rights and then communicating to the officers that he understood (indeed appellant informed the officers that it was his desire to cooperate) them, appellant can point to no part of the record which would indicate the police were guilty of any impropriety at this stage of the process. When appellant refused the opportunity to contact counsel upon entering the videotape room it can easily be concluded that he voluntarily, intelligently and understandingly rejected the police offer. We find that the record was replete with sufficient evidence to sustain the trial court's denial of appellant's motion to suppress which was based on his initial invocation of his right to counsel.

■ We now focus on the appellant's request to call an attorney which occurred during the phase of the videotaping when he was actually undergoing custodial interrogation. As previously noted, after the appellant performed several motor skill activities, he was again advised of the full panoply rights afforded under the *Miranda* decision, including the right to call an attorney. However, rather than accept the opportunity to contact an attorney the appellant responded that if he felt an attorney was necessary he would let the officers know. The appellant then acquiesced to the interrogation, admitting that he had been operating the vehicle, the type of vehicle he was operating at the time of his arrest, and his destination. Finally, when asked if he had been drinking appellant again invoked his right to counsel. Then he was asked if he desired to call an attorney, to which appellant replied in the affirmative with the addendum, "Unless you have another question that you'd like to ask me." The substance of the conversation which followed was that the appellant would decide whether to answer a question only after it was asked. Obviously, the appellant never exercised his right to contact his attorney.

The court of appeals was of the opinion that the continued questioning, after the appellant let the officers know he wanted to call a lawyer, constituted a violation of

---

7. This Court has viewed and listened to the videotape which was introduced into evidence as State's Exhibit No. 2 and found that there were no problems with either the audio or visual portions of the tape.

appellant's constitutional rights as set out in *Edwards v. Arizona, supra,* and its progeny. *Edwards v. Arizona, supra,* read in conjunction with its predecessor *Miranda v. Arizona, supra,* does establish the principle that once a defendant manifests a desire for an attorney all questioning must stop. However, when viewed in its entirety the colloquy between appellant and the officer demonstrates an intent by appellant to invoke a hybrid right to counsel. That is, his request for counsel was qualified by his desire to answer certain questions without the necessity of contacting an attorney.

We note that we would be precluded by the dictates of *Smith v. Illinois, supra,* from performing an analysis which could utilize any post-request responses of appellant in making a determination as to whether he actually invoked his right to counsel, if they were made in response to further police interrogation. In such a situation, the post-request responses "are relevant only to the question whether the accused waived the right he had invoked." [8] Under the facts of this case, however, we would be hard pressed to conclude that when the officer merely afforded appellant the opportunity to contact an attorney he was subjecting appellant to further interrogation as proscribed by *Smith v. Illinois, id.*

Although the appellant did relate his request in an unequivocal manner we do not deem it improper for the interrogating officers to inquire of appellant if he would now like to call his attorney, so long as the officer does not use the moment as guise in order to encourage, coerce or intimidate the accused into making a statement. See *Russell v. State,* 727 S.W.2d 573, 577 (Tex. Cr.App.1987). Such a situation is not presented here.

Rather than seizing upon the occasion to contact an attorney, appellant voluntarily commented that although he did not want to answer the particular inculpatory ques-

tion, he was perfectly willing to answer other questions which he found less offensive, and would do so without contacting an attorney. By continuing to question the appellant the officers simply complied with appellant's request.

Under such circumstances we find that the court of appeals erred in its conclusion that the officers' conduct during the custodial interrogation was a violation of appellant's constitutional rights under *Edwards v. Arizona, supra.* We further find that appellant in failing to contact an attorney when given the second opportunity and in expressing to the officers his desire to answer other questions without the assistance of counsel constituted a knowing and intelligent waiver of the right he had previously invoked.

By way of analogy, this case is similar to *Connecticut v. Barrett,* 479 U.S. 523, 107 S.Ct. 828, 93 L.Ed.2d 920 (1987). After William Barrett was arrested he told police that "he would not give the police any written statements but that he had no problem talking about the incident." *Id.,* 107 S.Ct. at 830. Because their tape recorder failed on two occasions, the officers were required to give Barrett his *Miranda* warnings after each failure and take a new oral statement. Barrett responded that although he would give an oral statement he would not consent to a written statement without the presence of counsel. The Connecticut Supreme Court held that Barrett had invoked his right to counsel and the subsequent oral confessions were taken in violation of *Edwards v. Arizona, supra.* The Supreme Court reversed, noting that "[n]othing in our decisions, however, or in the rationale of *Miranda,* requires authorities to ignore the tenor or sense of a defendant's response to these warnings." *Connecticut v. Barrett, supra,* 107 S.Ct. at 833. The Court further stated:

But we know of no constitutional objective that would be served by suppres-

---

**8.** With unmistaken clarity the Supreme Court in *Smith v. Illinois, supra,* held that once the determination is made that the accused invoked his right to counsel in a clear and unambiguous manner "[t]hat, under the clear logical force of settled precedent, an accused's *postrequest* re-

sponses to further interrogation may not be used to cast retrospective doubt on the clarity of the initial request itself. Such subsequent statements are relevant only to the distinct question of waiver." *Id.,* at 495.

sion in this case. It is undisputed that Barrett desired the presence of counsel before making a written statement. Had the police obtained such a statement without meeting the waiver standards of *Edwards*, it would clearly be inadmissible. Barrett's limited requests for counsel, however, were accompanied by affirmative announcements of his willingness to speak with the authorities. The fact officials took the opportunity provided by Barrett to obtain an oral confession is quite consistent with the Fifth Amendment. *Miranda* gives the defendant a right to choose between speech and silence, and Barrett chose to speak.

*Id.,* at 832 (footnote omitted).

Recognizing that the appellant's second request for counsel was clear and unambiguous we can see no reason why the reasoning of *Barrett, supra,* is not equally applicable to the present case. The officers that were questioning the appellant were simply complying with the appellant's request and did not initiate further interrogation until the appellant invited it. Just as *Miranda* does not require authorities "to ignore the tenor or sense of a defendant's response to these warnings," *id.,* at 833, neither does *Edwards* or *Smith* require that they ignore the volunteered statements of appellant which constitute a waiver of one's right to counsel. Appellant made clear his desire to communicate with the officers, and they simply honored his intentions.[9] Just as "*Miranda* gives the defendant a right to choose between speech and silence ...," *id.,* at 832, it also gives the defendant a right to choose between being represented by an attorney and not being represented. The appellant chose the latter alternative.

Essential to the court of appeals' opinion was its conclusion that the entire videotape was infected with a taint resulting from the wrongful custodial interrogation of the appellant was its belief that the police officers so mixed their request for the chemical sobriety test with the custodial interrogation that they confused the appellant

with the notion that he was entitled to an attorney because of the *Miranda* rights. Consequently, the court of appeals determined that the appellant's confusion therefore necessitated the suppression of the videotape. With due respect to the court of appeals we do not agree. The videotape session was separated into the following four distinct segments:

1. The advising appellant of the full panoply of rights required pursuant to the *Miranda* decision, including the right to have the assistance of counsel prior to or during any questioning. Thereafter, the appellant was properly given the opportunity to contact an attorney, which he rejected.

2. Appellant was then given a battery of motor skills examinations which he completed.

3. Again the appellant was given the *Miranda* warnings where he initially agreed to answer questions, then invoked his right to counsel, then agreed to answer other questions.

4. The appellant was then advised of the statutory warnings pursuant to Art. 6701*l*–5, § 2(b), *supra.* Appellant ultimately consented to a blood test.

Obviously, the videotape is not formally divided into the segments as aforementioned, but in viewing the tape the demarcations are obvious. We can find nothing in the record, including the videotape, which even arguably suggests that appellant was confused within the meaning of footnote 17 of *McCambridge, supra.* None of the officer's comments or the appellant's statements manifested an ambiguity regarding the appellant's constitutional right to the presence of an attorney, nor was the request for a blood test inexorably mixed with the custodial interrogation. See *McGinty v. State,* 723 S.W.2d 719 (Tex. Cr.App.1986). Accordingly, the judgment of the court of appeals is reversed and the cause is remanded to that court to consider the remainder of appellant's grounds for review.

**9.** In reference to the second invocation of counsel we also consider all the factors and circumstances which were mentioned in the discussion

of his initial request to call an attorney outside the videotape room.

MILLER, J., concurs in result.

TEAGUE, J., dissents.

CLINTON, Judge, concurring.

Accepting the court of appeals' recitation of the facts, appellant arguably invoked his Fifth Amendment right to counsel on two separate occasions—once before entering the video room, and then again when specifically asked by Officer Mock in the video room whether he had been drinking. In its petition for discretionary review the State vigorously asserts that the court of appeals relied only upon the latter invocation in holding on the basis of unassigned error that the trial court erred in failing to suppress not only the videotape, but also the results of the blood test. My reading of the court of appeals' opinion bears out the State's assertion. Because the court of appeals did not purport to address whether appellant's request to call a lawyer before he entered the video room constituted an unequivocal invocation of his right to counsel before submitting to custodial interrogation, or, if so, whether that right was violated, I would not review that question today. Especially where a court of appeals has reversed a case on the basis of unassigned error, this Court's review ought not to exceed the scope of that court's holding.

Nevertheless, the majority today "indulge[s] in the assumption that this initial plea to call an attorney was tantamount to a request to have counsel present prior to or during any custodial interrogation." At p. 375. The majority then decides that, having invoked the right, appellant subsequently waived it by failing to avail himself of the opportunity to call an attorney in the video room, with the video machine running. In view of appellant's avowed, and not altogether unreasonable fear that calling his attorney on video could eventually come back to haunt him, at p. 375, I can hardly subscribe to the majority's bald conclusion appellant voluntarily relinquished any right to counsel he may have asserted. At any rate, whether appellant actually invoked his right to counsel before entering the video room is a question fairly presented in context of appellant's fifth point of error on appeal. I would leave the entire issue for the court of appeals' decision upon remand.

Turning to appellant's invocation of counsel which actually appears on the videotape, and upon which the court of appeals expressly relied in its holding, I agree with the majority's conclusion that this invocation was limited to the single question whether appellant had been drinking. See *Connecticut v. Barrett,* 479 U.S. 523, 107 S.Ct. 828, 93 L.Ed.2d 920 (1987). Because appellant never answered that question, the only potential error I can see arises from the bare fact the jury was allowed to view appellant invoking his right, and could have drawn an inference of guilt therefrom. This was not the court of appeals' concern, however, and I would not affirm a reversal by a lower court in a petition for discretionary review on the basis of error not contemplated by that court.

As the State urges in a separate ground for review, the court of appeals erred in another respect. Even had appellant's invocation of right to counsel in the video room been a broad one, justifying suppression of any subsequent evidence that was the product of custodial interrogation, it was unnecessary to suppress either the visual portion of the videotape depicting the physical tests for sobriety, or the results of the blood test. A request to submit to such testing does not constitute "interrogation" for purposes of the Fifth Amendment. See *Bass v. State,* 723 S.W.2d 687 (Tex.Cr.App.1986); *McCambridge v. State,* 712 S.W.2d 499 (Tex.Cr.App.1986).

We granted yet a third ground for review in this cause. There the State argues that, assuming the court of appeals was otherwise correct that both videotape and blood test results should have been suppressed, the court erred in failing to inquire whether admission of that evidence was harmless beyond a reasonable doubt. Our disposition of the State's other grounds for review makes resolution of this one unnecessary.