# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-06-00561-CR

**Harold Maurice Hunter, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF BASTROP COUNTY, 21ST JUDICIAL DISTRICT
### NO. 11,896, HONORABLE TERRY L. FLENNIKEN, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury convicted Harold Maurice Hunter of murder and assessed his punishment at ninety-nine years in prison and a $10,000 fine. Hunter contends that the trial court erred by admitting a videotape of his statement to police because it was not produced to him more than twenty days before trial. He also contends that he did not knowingly, intelligently, and voluntarily waive his right to counsel before making his statement to police. Finally, he contends that he received ineffective assistance of counsel at trial. We affirm.

During a two-hour, videographed session, Hunter dictated and signed a statement in which he admitted that he was one of three men who stabbed Shawn Reilly and left him dead in a field. Hunter said Reilly was killed to prevent him from talking about illegal drug sales. Hunter said he tried to avert the plot and tried to warn Reilly, but nonetheless held him down and "stuck him" in the neck with a four-inch blade. The body was later moved and abandoned in a different field.

Bastrop County Sheriff's Investigator Clarence Yarbrough described the discovery of scattered human remains and a CrimeStopper's tip that led to the interrogation of James Reilly. That interrogation led to Hunter's arrest and a search warrant for a ranch where physical evidence of the murder—not specifically linked to Hunter—was found. Other witnesses testified to the processes by which the remains were identified as most probably being those of Shawn Reilly.

Hunter contends that the trial court erred by admitting the video recording of his statement because his attorney was not provided a true, complete, and accurate copy of the recording at least twenty days before trial. *See* Tex. Code Crim. Proc. Ann. art. 38.22, § 3(a)(5) (West 2005). It is undisputed that Hunter was not given his own copy of the recording. However, the court of criminal appeals has held that the State need not give defense counsel a copy of the recording to satisfy the statutory requirement to provide a copy:

> So long as defense counsel is informed of the existence of the recording and permitted reasonable access to a copy, the purpose of § 3(a)(5) has been met. Requiring actual delivery would have the adverse consequence of excluding evidence that is both relevant and legally obtained where the defense has suffered no harm but has had the opportunity to evaluate and test the evidence. If the legislature had intended to require actual delivery, they could have used the word "served," "given," or "delivered" instead of "provide." Given the object sought by the statute and the consequences of the differing constructions, we hold that the word "provide" in § 3(a)(5) means to "make available or furnish."

*Lane v. State*, 933 S.W.2d 504, 516 (Tex. Crim. App. 1996). The Texas Court of Criminal Appeals has also held that the State may not simply wait until a defendant files a motion to suppress or an objection to the admission of such a recording, but must affirmatively turn over a copy of the recording timely in order to satisfy the statute. *See Sells v. State*, 121 S.W.3d 748, 763 (Tex. Crim.

2

App. 2003). Read together, these cases stand for the proposition that the State satisfies its statutory burden to provide a copy of the recording by informing the defense that it may view the recording twenty days before trial.

Hunter concedes that his counsel was aware in September 2005 that the State had a DVD recording of his statement. He asked to view it, but the district attorney lacked the proper DVD player.[1] Hunter filed a motion requesting a copy, but that motion was never ruled upon. In March 2006, the district attorney's office acquired a suitable DVD player.[2] There is no indication that the State informed Hunter's attorney of this acquisition or that Hunter renewed his request to view the DVD before the Friday preceding his June 2006 trial. Nevertheless, Hunter's attorney knew about the DVD and could have viewed it more than twenty days before trial. The trial court did not err by admitting the recording over Hunter's objection.

Even if the court erred by admitting the video because Hunter's attorney was not informed of the acquisition of the proper DVD player more than twenty days before trial, we are not persuaded that the error was harmful because of the admission of Hunter's contemporaneous written statement in which he confesses to committing the murder. The written statement is essentially a

---

[1] It is undisputed that, before March 2006, the district attorney's office did not have a DVD player capable of reading DVDs in the format provided or producing copies. The DVD player acquired in March 2006 could read such DVDs, but not copy them.

[2] Hunter's attorney stated that he could not have viewed the video when the district attorney's office acquired the equipment in March because he was occupied by a three-week vacation and moving into a new house and office.

Hunter's attorney called the prosecutor, asking to view the DVD the Friday before the Monday trial. The prosecutor offered to meet Hunter's attorney over the weekend, but Hunter's attorney was unable to view the recording.

3

transcription of the oral statement shown on the video except that some of the repetitious statements are excluded. No significant statements are shown in the video that are not set out in the written statement. In light of the contents of the written statement and the remainder of the trial, the additional admission of the video did not affect his substantial rights. *See* Tex. R. App. P. 44.2(b); *see also Bagheri v. State*, 119 S.W.3d 755, 763 (Tex. Crim. App. 2003); *cf. Gee v. Liberty Mut. Fire Ins. Co.*, 765 S.W.2d 394, 396 (Tex. 1989).

Hunter next contends that he did not knowingly, intelligently, and voluntarily waive his right to counsel when making his statement to police. *See* Tex. Code Crim. Proc. Ann. art. 38.22, § 3(a)(2) (West 2005).[3] There is no dispute that Bastrop County Sheriff's Department Investigator Clarence Yarbrough apprised Hunter of his right to counsel and gave him the warnings required by *Miranda v. Arizona*, 384 U.S. 436 (1966). It is also undisputed that Hunter acknowledged those rights in writing and signed a waiver of those rights before making the statement. Hunter contends, however, that he invoked his right to counsel and could not thereafter validly waive that right without the assistance of counsel.

---

[3] Section 3(a)(2) requires that, for a videotaped statement to be admissible, the following warning applicable to written statements be given on the videotape, but before the statement itself:

> No written statement made by an accused as a result of custodial interrogation is admissible as evidence against him in any criminal proceeding unless it is shown on the face of the statement that:
> (a) the accused, prior to making the statement, either received from a magistrate the warning provided in Article 15.17 of this code or received from the person to whom the statement is made a warning that: . . .
> (3) he has the right to have a lawyer present to advise him prior to and during any questioning . . . .

Tex. Code Crim. Proc. Ann. art. 38.22, § 2 (West 2005) (requirements adopted by *id.* § 3).

4

Once an accused has invoked his right to counsel, interrogation by the police must stop until counsel is provided or until the accused himself initiates contact with police. *Dinkins v. State*, 894 S.W.2d 330, 350 (Tex. Crim. App. 1995) (citing *Minnick v. Mississippi*, 498 U.S. 146, 153 (1990)). When an accused's invocation is unclear, ambiguous, or equivocal, the interrogating officers are not required to automatically stop the interview. *Id.* at 351-52. They may continue questioning the accused to ascertain whether he wishes to speak to an attorney or continue the questioning without the assistance of counsel. *Davis v. United States*, 512 U.S. 452, 462 (1994). Police may not use such clarification as a guise to encourage, coerce, or intimidate the accused to make a statement. *Jamail v. State*, 787 S.W.2d 372, 377 (Tex. Crim. App. 1990). In reviewing an alleged invocation of the right to counsel, a reviewing court must look at the totality of the circumstances surrounding the interrogation and alleged invocation to determine whether an accused's statement can be construed as an actual invocation of the right. *Dinkins*, 894 S.W.2d at 351. The inquiry is an objective one: whether a reasonable officer, under similar circumstances, would have understood the statement to be a request for an attorney or merely one that might be invoking the right to counsel. *See id.* (quoting *Davis v. United States*, 512 U.S. 452, 459 (1994)).

Waiver is shown as a matter of law with regard to the right to an attorney during pretrial questioning if an accused (1) who has not yet retained or been appointed counsel, (2) decides voluntarily not to rely on his right to counsel, and (3) that decision is made with the understanding that he could remain silent and request a lawyer and that the State could use any statement he gave against him. *Arabzadegan v. State*, 240 S.W.3d 44, 47 (Tex. App.—Austin 2007, pet. ref'd); *see also Robinson v. State*, 851 S.W.2d 216, 224 (Tex. Crim. App. 1991) (citing *Patterson v. Illinois*,

5

487 U.S. 285, 297 (1988)).  A defendant who has retained counsel cannot waive the right to counsel without the involvement of that counsel.  *Arabzadegan*, 240 S.W.3d at 49 (citing *Holloway v. State*, 780 S.W.2d 787, 795 (Tex. Crim. App. 1989)).  While the State bears the burden of proving a valid waiver of the right to counsel, the defense bears the burden to prove the existence of an attorney-client relationship invalidating unilateral, uncounseled waiver.  *Id.* at 53-54.

The following exchange in the direct examination of Investigator Yarbrough pertains to whether Hunter was represented or invoked his right to counsel:

Q.  Okay.  And what, if anything, to the best of your recollection did he ask you about a lawyer?

A.  He asked me do I think he needs to have an attorney present or have his lawyer.

Q.  Okay.  He also indicated to you that he had had an attorney for 20 years, something like that?

A.  Yes, sir, he did.

Q.  Okay.  And what was your response to his statement?

A.  If he wanted an attorney I could not conduct an interview with him.

Q.  Okay.  Did you ask him if he wanted to continue to talk to you or if he wanted an attorney?

A.  I asked him did he want an attorney and did he want to continue to talk to me.

Q.  And what was his response?

A.  He later said that he would go ahead and talk to me, he don't see what it could hurt.

Cross-examination revealed that Hunter's query whether he needed a lawyer prompted another officer to interrupt the questioning to discuss with Yarbrough whether Hunter had invoked his right to counsel, requiring the interview to stop:

Q. At that point after, when he first said that, you interpreted it—according to your report—and Sergeant Daniels interpreted it—according to your report—as him asking for a lawyer, correct?

A. Yes.

Q. And when you walked back into the room, that's what you told him, I can't talk to you because you want a lawyer.

A. But he waived his rights and stated that, I will continue to speak with you without my attorney present. So he waived his rights at that point.

The trial court did not err by concluding that Hunter did not have counsel or unequivocally invoke his right to counsel before waiving his right to counsel. The attorney-client relationship is contractual and results from the mutual agreement and understanding of the parties concerned. *Arabzadegan*, 240 S.W.3d at 49. To establish an attorney-client relationship, the parties must explicitly or by their conduct manifest an intention to create it. *Id.* at 50. The only evidence of an existing relationship is Yarbrough's agreement that Hunter said "something like" that he had "had an attorney" for twenty years. That does not indicate an existing, mutually agreed relationship concerning this case.[4] Nor does the record establish an invocation of the right to counsel. At most, Hunter asked if he should get a lawyer. Hunter did not, by asking that question, unequivocally assert

---

[4] We note that Hunter's trial counsel was appointed and that both the request for appointed counsel and the appointment of counsel occurred after the interview in question was completed.

7

his right to counsel. *In re H.V.*, 252 S.W.3d 319, 325 (Tex. 2008) (citing, e.g., *Davis v. United States*, 512 U.S. 452, 458 (1994)); *see also Soffar v. Cockrell*, 300 F.3d 588, 595 (5th Cir. 2002); *Dinkins*, 894 S.W.2d at 352. The trial court did not err by overruling Hunter's objection to the admission of the statement based on his challenges to the waiver of the right to counsel.

Hunter contends that he was denied effective assistance of trial counsel. We evaluate claims of ineffective assistance of counsel against the standard set forth in *Strickland v. Washington*. *See* 466 U.S. 668, 687 (1984); *Hernandez v. State*, 988 S.W.2d 770, 774 (Tex. Crim. App. 1999). In deciding a claim of ineffective assistance of counsel, we must determine whether an attorney's performance was deficient and, if so, whether that deficiency prejudiced the defense. *Strickland*, 466 U.S. at 687; *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). An attorney's performance is deficient if it falls below an objective standard of reasonableness. *Strickland*, 466 U.S. at 688; *Thompson*, 9 S.W.3d at 812. In determining whether an attorney's performance was deficient, we apply a strong presumption that the attorney's conduct was within the range of reasonable professional assistance. *Id.* at 814. We do not speculate about an attorney's strategy. *Blevins v. State*, 18 S.W.3d 266, 271 (Tex. App.—Austin 2000, no pet.). We review counsel's effectiveness in light of the totality of the representation and particular circumstances of each case. *Thompson*, 9 S.W.3d at 813. Deficient performance is prejudicial when, but for the attorney's unprofessional conduct, there is a reasonable probability that the outcome of the proceeding would have been different. *Strickland*, 466 U.S. at 694; *Thompson*, 9 S.W.3d at 812. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Strickland*, 466 U.S. at 694; *Thompson*, 9 S.W.3d at 812. Absent both showings, we cannot conclude that there has

8

been a breakdown in the adversarial process that renders the result of a trial unreliable. *Thompson*, 9 S.W.3d at 813.

Hunter contends that his counsel was ineffective because he did not adequately prepare for trial. The core issue is his failure to review the video of his statement to police and to obtain a ruling on its admissibility before trial. Hunter's statement was the only evidence linking him to the murder. Hunter contends that counsel's inaction regarding the video hampered his counsel's ability to plea bargain, to conduct adequate discovery in advance of trial, and to conduct voir dire and make an opening statement because he did not know if the video would be admitted. Hunter complains that his counsel filed only one pretrial motion—regarding discovery—which was never heard or ruled upon due to a discovery agreement, which Hunter contends was not followed or enforced. His counsel called no witnesses during the guilt-innocence phase, and called only one witness during the punishment phase.

Hunter has not shown that his counsel was ineffective. He does not show that there were available witnesses with exculpatory or otherwise helpful testimony to offer who were not called. Trial counsel did call a witness at punishment who was a friend and co-worker who testified regarding Hunter's generosity, goodness, and lack of violent tendencies. Hunter does not describe any motions or objections that should have been made, much less changed the outcome of the case. While counsel likely should have examined the video of the statement sooner,[5] he did upon being appointed obtain the file which contained Hunter's written statement in which he confesses to participating in the murder as one of three persons stabbing the victim. Hunter has not shown that

---

[5] Had counsel viewed the video sooner, he would have eliminated the procedural argument for its exclusion. Passively creating a possible procedural basis for exclusion may have been the best available strategy for suppressing the video of the statement.

reading the statement did not adequately advise counsel of what the video of the making of the statement would show, at least for purposes of discovery and investigation.  Counsel objected to the admission of both the written and video statements.  The alleged deficiencies in representation do not overcome the strong presumption that counsel's performance was adequate.

Even if the failure to review the video sooner were so egregious that it rendered counsel ineffective, however, Hunter does not show prejudice from counsel's performance.  His written statement confessing to the murder was admitted.  It alone supplies the evidence sufficient to support the conviction.  Combined with the evidence that the murder occurred, it provides evidence to support the punishment.  The video of the making of the statement merely allowed the jury to watch the formulation of the statement.  We are not persuaded that there is a reasonable possibility that the outcome would have been different but for any deficiency in counsel's performance.

Affirmed.

_____

G. Alan Waldrop, Justice

Before Justices Patterson, Pemberton and Waldrop

Affirmed

Filed:   December 31, 2008

Do Not Publish

10