

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

Nos. 04-19-00427-CR, 04-19-00428-CR & 04-19-00429-CR

The **STATE** of Texas,
Appellant

v.

Raymond Corey **SOTO**,
Appellee

From the 226th Judicial District Court, Bexar County, Texas
Trial Court Nos. 2018-CR-9018, 2018-CR-9019 & 2018-CR-9020
Honorable Velia J. Meza, Judge Presiding

Opinion by:    Liza A. Rodriguez, Justice

Sitting:      Luz Elena D. Chapa, Justice
              Beth Watkins, Justice
              Liza A. Rodriguez, Justice

Delivered and Filed: October 28, 2020

AFFIRMED

The State of Texas appeals the portion of the trial court's order suppressing statements made by Raymond Soto and physical evidence seized from his home after he invoked his right to counsel. We affirm the portion of the trial court's order granting Soto's motion to suppress.

### BACKGROUND

The following undisputed facts were developed at the suppression hearing through the testimony of the responding officer and admission of his bodycam video. On June 27, 2017, the apartment manager of a complex located at 7600 Blanco Road in Bexar County, Texas called the

police and reported that packages smelling of marijuana had been delivered to the office. San Antonio Police Officer Joe Warren responded to the call. He personally observed that the packages had the odor of marijuana and were mailed from California and Colorado, states where marijuana is legal. The manager informed Officer Warren that Soto, a resident, had previously attempted to retrieve the packages but permission was denied because, even though the address matched Soto's apartment address, the recipients' names did not match Soto's name. Soto had asked for the packages under the names of the recipients, but under the management's policy a person was not permitted to pick up packages not addressed in his or her name. Officer Warren confirmed that Soto was the only person listed on the apartment lease.

Officer Warren contacted the SAPD Narcotics Division and Detective Chad Ripley arrived shortly thereafter. Officer Warren testified that Detective Ripley[1] also observed the odor of marijuana coming from the packages. Detective Ripley instructed the apartment manager to contact Soto and tell him he could come pick up the packages. After Soto retrieved the packages, he was stopped by Detective Ripley outside his apartment. The video shows that, when asked why he was picking up packages addressed to other people, Soto first claimed not to know the recipients but then stated they were his "co-workers" or "buddies." When asked what business his buddies were in, Soto replied, "alarms and cameras." Detective Ripley then asked Soto if it was "ok to open the packages?" Soto responded, "It's not mine to open, sir." Detective Ripley proceeded to open one of the packages and discovered it contained marijuana. Soto was immediately placed in handcuffs and informed he was under arrest for being in possession of the marijuana.

---

[1] Detective Ripley was unavailable to testify at the suppression hearing.

During the ensuing search of Soto's person incident to his arrest, Detective Ripley found a large amount of cash in Soto's pockets and wallet. The following exchange occurred as the search continued:

Soto:   Can I call my lawyer, sir?

Det. Ripley:   Well — you can do that — if I take you to jail. You will be given a phone call at that time. That's just how the procedure works so — we don't stop and I give you a phone and say "Call him right now." That's not how it goes. But yes, you get a call.

These statements are recorded at the 6:07 time marker on Officer Warren's bodycam video, which was admitted as State's Exhibit No. 4. Detective Ripley then expressed his belief that he had probable cause to search Soto's apartment and asked if he had "anything illegal" in the apartment. Soto replied that he had several weapons and described them. Soto denied that he was a convicted felon and Detective Ripley stated it was not illegal for him to have the weapons if that proved true. Detective Ripley then read Soto his *Miranda* rights. Soto verbally acknowledged that he understood his rights.

After giving Soto the *Miranda* warning, Detective Ripley continued questioning Soto about what he would find inside his apartment. Soto answered the detective's questions by making several incriminating statements, admitting that he "smokes a lot of weed," and had "some hash oil" and other forms of marijuana inside his apartment. Soto declined to answer when Detective Ripley asked whether he had any "hard stuff" like cocaine or methamphetamine in his apartment. Soto eventually answered that he "did not do meth," and shook his head in the negative about having cocaine. Detective Ripley repeated that he intended to search Soto's apartment and explained that Soto had two choices — either give consent to the search or require the detective to obtain a search warrant. Soto replied that Detective Ripley should get a search warrant. Detective Ripley subsequently obtained a search warrant based in part on Soto's admissions. Pursuant to the

search, the police seized 831.723 grams of Delta 9 Tetrahydrocannabinol (a form of marijuana), 19.259 grams of Cocaine, three firearms, and $14,000 in cash.

Soto was indicted in three separate cases for: possession of and possession with intent to deliver a Penalty Group 1 controlled substance in an amount between 4 grams and 200 grams; possession of and possession with intent to deliver a Penalty Group 2 controlled substance in an amount between 4 grams and 400 grams; and possession of marijuana in an amount between 4 ounces and 5 pounds. The three cases were consolidated in the trial court.

Soto filed a pretrial motion to suppress all statements made and physical evidence seized. A few days after the conclusion of the suppression hearing, the trial court made verbal findings of fact and conclusions of law on the record. As to the evidence seized from the packages, the trial court found that Soto expressly denied any ownership interest in the packages and their contents. The court therefore concluded that as a matter of law Soto had no expectation of privacy in the packages to trigger the Fourth Amendment's protection and the evidence recovered from the packages was admissible. As to the admissibility of Soto's incriminating statements and the evidence seized from his apartment pursuant to the search warrant, the trial court found that Soto's request, "Can I call a [my] lawyer?" was made after he was arrested and in custody. The trial court concluded that under the totality of the circumstances Soto's request to call a lawyer was not part of a casual conversation with the detective, but rather was "a clear invocation of his right to Fifth Amendment counsel to have a lawyer present during interrogation, a custodial interrogation." The trial court therefore ruled that all of Soto's statements made after his request for counsel were inadmissible and all of the evidence seized from his apartment under the search warrant based on his admissions was similarly inadmissible. Based on its findings of fact and conclusions of law, the trial court denied Soto's motion to suppress in part as to the evidence contained in the packages and granted the motion in part as to all the evidence seized from his apartment and the

incriminating statements made after Soto's invocation of his right to counsel. The State appealed the portion of the order granting Soto's motion to suppress.

## MOTION TO SUPPRESS

On appeal, the State argues the trial court's suppression order must be reversed because the totality of the circumstances show Soto did not clearly, unequivocally, and unambiguously assert his right to counsel under the applicable law. The State does not dispute that Soto was under custodial interrogation at the time he asked, "Can I call my lawyer?"

### Standard of Review

We review a trial court's ruling on a motion to suppress under a bifurcated standard, reviewing fact-findings for an abuse of discretion and applications of law de novo. *State v. Ruiz*, 581 S.W.3d 782, 785 (Tex. Crim. App. 2019); *State v. Rodriguez*, 521 S.W.3d 1, 8 (Tex. Crim. App. 2017). We afford almost total deference to the trial court's determination of historical facts, especially when it is based on assessment of a witness's credibility, as long as the fact-findings are supported by the record. *Johnson v. State*, 414 S.W.3d 184, 192 (Tex. Crim. App. 2013); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We apply the same deferential standard when reviewing the court's ruling on mixed questions of law and fact where resolution of those issues turns on an evaluation of credibility. *Johnson*, 414 S.W.3d at 192. We review *de novo* the trial court's application of the law to the facts and its resolution of mixed questions of law and fact that do not depend upon credibility assessments. *Id.*; *Wade v. State*, 422 S.W.3d 661, 669 (Tex. Crim. App. 2013). We view the record in the light most favorable to the trial court's determination and will reverse its ruling only if it was arbitrary, unreasonable, or "outside the zone of reasonable disagreement." *State v. Story*, 445 S.W.3d 729, 732 (Tex. Crim. App. 2014).

### *Invocation of the Right to Counsel*

Under the Fifth Amendment, an accused has the right to consult with an attorney and to have an attorney present during a custodial interrogation and the police must explain this right to the accused before questioning begins. U.S. CONST. amend. V; *Edwards v. Arizona*, 451 U.S. 477, 482 (1981); *Miranda v. Arizona*, 384 U.S. 436, 469-73 (1966). The right to counsel during custodial interrogation was created as a procedural safeguard to "insure that the right against compulsory self-incrimination was protected." *Michigan v. Tucker*, 417 U.S. 433, 444 (1973). "[O]nce a defendant in custody asks to speak with a lawyer, all interrogation must cease until a lawyer is present." *Rhode Island v. Innis*, 446 U.S. 291, 293 (1980) (citing *Miranda v. Arizona*, 384 U.S. 436, 474 (1966)). After an accused has invoked his right to counsel, police questioning must immediately stop until either counsel has been made available or the accused himself reinitiates further communications with the police. *Edwards* 451 U.S. at 484-85; *Minnick v. Mississippi*, 498 U.S. 146, 153 (1990); *State v. Gobert*, 275 S.W.3d 888, 892 (Tex. Crim. App. 2009).

The accused's mere mention of the word "attorney" or "lawyer" does not automatically invoke the right to have counsel present during questioning; rather, an accused's request for counsel must be unequivocal and unambiguous. *Davis v. United States*, 512 U.S. 452, 459 (1994); *Dinkins v. State*, 894 S.W.2d 330, 351 (Tex. Crim. App. 1995). At a minimum, *Davis* requires that a suspect express a definite desire to speak to an attorney. *Dinkins*, 894 S.W.2d at 351; *Lucas v. State*, 791 S.W.2d 35, 45 (Tex. Crim. App. 1989) ("The right to counsel is considered invoked where a person indicates he or she desires to speak to an attorney or have an attorney present during questioning."). Courts determine whether a suspect's statement referring to a lawyer constitutes an actual invocation of the right to counsel by considering the statement itself and the totality of the circumstances surrounding the statement. *Gobert*, 275 S.W.3d at 892; *Dinkins*, 894 S.W.2d at

351. The inquiry is an objective one: whether the accused articulated his desire for the assistance of counsel sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney. *Davis*, 512 U.S. at 458-59; *Gobert*, 275 S.W.3d at 892-93; *Dinkins*, 894 S.W.2d at 351.

### *Application of the Law to the Facts*

Here, the trial court assessed Soto's demeanor and tone of voice on the bodycam video when he asked, "Can I call my lawyer, sir?" within the context of the surrounding circumstances. The trial court found that Soto did not refer to calling his lawyer as part of "a casual conversation" or "casual encounter," but instead expressed a clear desire to speak to his lawyer at that time. The trial court concluded that, under the applicable law, Soto's request, "Can I call my lawyer, sir?" was a clear invocation of his right to counsel, Detective Ripley's questioning should have ceased at that moment, and any evidence obtained thereafter was inadmissible.

The State argues that under *Davis* and applicable Texas precedent, Soto did not make an unequivocal and unambiguous invocation of his right to counsel. The State suggests Soto's question, "Can I call my lawyer?" is substantially similar to the statements "Maybe I should talk to a lawyer" in *Davis* and "Maybe I should talk to someone" in *Dinkins*, which did not constitute clear invocations. *See Davis*, 512 U.S. at 462 (holding suspect's statement "Maybe I should talk to a lawyer" during the interrogation was too equivocal to express a clear desire for the assistance of counsel at that time); *see also Dinkins*, 894 S.W.2d at 352 (holding "Maybe I should talk to someone" failed to specify that the suspect wished to speak with a lawyer and the statement was therefore too ambiguous to constitute an invocation of counsel). Here, Soto did not equivocate in his desire to call his lawyer by prefacing the request with "maybe" and he was not vague about *who* he wished to call.

The State also relies on several cases from this court, as well as cases from our sister courts. But, the language used and the circumstances surrounding the suspects' alleged invocations of the right to counsel in those cases are distinguishable. In *Flores v. State*, we held that the suspect's question, "Will you allow me to speak to my attorney before?" was neither a clear nor unequivocal assertion of the suspect's desire to have an attorney present where the surrounding circumstances reflected the suspect's indecisiveness. *Flores v. State*, 30 S.W.3d 29, 34 (Tex. App.—San Antonio 2000, pet. ref'd). In response to Flores's question about speaking to an attorney, the officer responded that "he could call his attorney if he wanted," but instead of making the call Flores continued explaining what had occurred and voluntarily went to the police station to give a statement without ever calling an attorney. *Id.* Similarly, in *Hernandez v. State*, we held that the statement, "I might want to talk to my lawyer first" was not an unequivocal invocation of the right to counsel where the suspect followed that statement with a question to the officer asking what was going to happen to him and continued explaining what happened during the incident under investigation. *Hernandez v. State*, No. 04-01-00271-CR, 2002 WL 461374, at *3 (Tex. App.—San Antonio Mar. 27, 2002, no pet.) (mem. op., not designated for publication) (holding the statement was not a direct request for counsel under *Davis*). In *Lemmons v. State*, we held the suspect's statements during interrogation that, "I'm done for the evening sir, please . . . If you all would like to talk tomorrow or something, I would be more than willing to talk. But for the evening *or* until I can get a lawyer . . ." was not an unequivocal assertion of his right to counsel. *Lemmons v. State*, 75 S.W.3d 513, 518-20 (Tex. App.—San Antonio 2002, pet. ref'd) (emphasis added) (stressing that use of the word "or" made the request conditional and equivocal). Here, Soto never declined a chance to call his lawyer or cease the interrogation and obtain counsel, and did not initiate a dialogue with Detective Ripley by asking his own questions or volunteering his version of events.

The other cases cited by the State are similarly distinguishable from Soto's case. *See, e.g., Gutierrez v. State*, 150 S.W.3d 827, 832 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (suspect's question "Can I have him [my attorney] present now?" was not an unambiguous invocation of the right to counsel where he subsequently stated he did not want counsel present if it would end the questioning); *Mbugua v. State*, 312 S.W.3d 657, 665 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd) ("Can I wait until my lawyer gets here?" was not an unqualified and unambiguous assertion of the right to counsel); *Halbrook v. State*, 31 S.W.3d 301, 302-04 (Tex. App.—Fort Worth 2000, pet. ref'd) (suspect's question "Do I get an opportunity to have my attorney present?" was not a clear, unambiguous assertion of a desire for counsel); *State v. Norris*, 541 S.W.3d 862, 865-67 (Tex. App.—Houston [14th Dist.] 2017, pet. ref'd) ("Well, give me a lawyer or something because I'm sure I have" and "I just want to make a phone call and call my sister and see if she could go get me a lawyer or something …" were not unambiguous and unequivocal requests for counsel); *Dalton v. State*, 248 S.W.3d 866, 873 (Tex. App.—Austin 2008, pet. ref'd) (asking the officer to ask or tell his friends to get the suspect a lawyer was not a clear invocation of the right to counsel); *Molina v. State*, 450 S.W.3d 540, 547 (Tex. App.—Houston [14th Dist.] 2014, no pet.) ("If I'm getting blamed for something like that . . . I'm going to just go ahead and call my lawyer" was not an unambiguous invocation of the right to counsel).

The State asserts that Detective Ripley's reply "if I take you to jail" indicates he interpreted Soto's question as a reasonable officer would — as inquiring "whether *an opportunity* to call a lawyer existed." We disagree that such an interpretation is reasonable based on Soto's words and the surrounding circumstances.[2] Detective Ripley had just informed Soto he was under arrest for

---

[2] The trial court made a fact finding that when "Mr. Soto asked if he could call a lawyer . . . Ripley answered, while he kind of chuckled, laughed at it, [and said] Yes, but not right now." The trial court stated on the record that the right to counsel is "an individual right that is afforded to every single citizen that an officer cannot gloss over or decide at what point that right applies," and noted that Ripley was a seasoned detective who "should have known better."

possession of the marijuana inside the opened packages and had handcuffed him with his hands behind his back. Soto said, "Can I call my lawyer, sir" while Detective Ripley was in the process of searching Soto's person incident to the arrest. Soto was in custody and was being questioned by Detective Ripley when he requested to call his lawyer. Based on the language and the totality of the circumstances, we conclude Soto's explicit request, "Can I call my lawyer, sir" clearly expressed a definite desire to "speak with a lawyer" at that time. *See Innis*, 446 U.S. at 293; *see also Dinkins*, 894 S.W.2d at 351. In *Jamail v. State*, even though the court held Jamail subsequently waived his right to counsel, it characterized his statement, "Now it's time for me to call my lawyer" as a clear, unequivocal request for counsel. *Jamail v. State*, 787 S.W.2d 372, 374-5 (Tex. Crim. App. 1990) (per curiam) (based on assumption that suspect was under custodial interrogation at time of his statement).

Finally, the State argues the clarity of Soto's alleged invocation is undermined by the fact that Soto continued answering Detective Ripley's questions after he asked to call his lawyer. An accused's subsequent responses to continued police interrogation may not be used as part of the "totality of the circumstances" to determine in retrospect whether he "really meant" to invoke the right to counsel in a previous statement. *Gobert*, 275 S.W.3d at 893. "[u]nder the clear logical force of settled precedent, an accused's *postrequest* responses to further interrogation may not be used to cast retrospective doubt on the clarity of the initial request itself." *Smith v. Illinois*, 469 U.S. 91, 100 (1984).

Viewing Soto's explicit request "Can I call my lawyer, sir" within the totality of the circumstances leading up to the request, we conclude that Soto unambiguously and unequivocally invoked his right to counsel and Detective Ripley therefore had a duty to terminate the interrogation at that time. *See Davis*, 512 U.S. at 459; *see also Gobert*, 275 S.W.3d at 892. We

hold that the trial court properly granted Soto's motion to suppress with respect to his statements and the evidence seized after he invoked his right to counsel.

## CONCLUSION

Based on the foregoing reasons, we affirm the challenged portion of the trial court's order suppressing Soto's incriminating statements and the evidence seized from his apartment pursuant to the search warrant.

Liza A. Rodriguez, Justice

DO NOT PUBLISH