99-00028 & 99-00029 Flores v State of Texas.wpd



Nos. 04-99-00028-CR & 04-99-00029-CR



Carlos Enrique FLORES,


Appellant



v.



The STATE of Texas,


Appellee



From the 175th Judicial District Court, Bexar County, Texas


Trial Court Nos. 97-CR-5817 & 98-CR-0104


Honorable Mary Roman, Judge Presiding



Opinion by: Alma L. López, Justice


Sitting: Tom Rickhoff, Justice

 Alma L. López, Justice

 Sarah B. Duncan, Justice


Delivered and Filed: August 23, 2000


Cause No. 97-CR-5817: AFFIRMED AS REFORMED; Cause No.98-CR-0104: AFFIRMED


 The appellant, Carlos Enrique Flores, was charged with intoxication manslaughter and
manslaughter in Cause No. 97-CR-5817 (1) after the vehicle he was driving struck another vehicle and
caused the death of the driver of the other vehicle. As a result of the accident, Flores was also
charged with failure to stop and render aid in Cause No. 98-CR-0104.(2) These charges were
consolidated for trial and the causes were tried before a jury. The jury found Flores guilty of all three
charges, and assessed a twenty-year sentence for intoxication manslaughter, a twenty-year sentence
for manslaughter, and a five-year sentence for failing to stop and render aid. Flores appeals his
convictions in this appeal.

Flores's Double Jeopardy Claim

 In his first issue, Flores complains that convicting him for both intoxication manslaughter
and manslaughter for the same conduct with only one victim violated his double jeopardy rights.
The State concedes that under the decision in Ex parte Ervin that Flores is entitled to relief from one
of the manslaughter convictions. Ex parte Ervin, 991S.W.2d 804 (Tex. Crim. App. 1999). In Ex
parte Ervin, the Court of Criminal Appeals determined that intoxication manslaughter and
manslaughter are the same offense for double jeopardy purposes when the offenses involve the same
victim. Ex parte Ervin, 991 S.W.2d at 817. As a result, we sustain this issue.

 In determining which conviction should be upheld, under similar circumstances, the Court
adopted and applied the "most serious offense" test. Ex parte Pena,820 S.W.2d 806, 809 (Tex. Crim.
App. 1991). Under this test, conviction for the most serious offense must be upheld. Id. Here,
however, the classification of the offenses and the associated punishment range indicate that each
offense is equally serious.(3) As a result, we will apply the method used prior to the adoption of the
most serious offense test: uphold the first conviction and vacate the second conviction. See Ex Parte
Pena, 820 S.W.2d at 808; Holcomb v. State, 745 S.W.2d 903, 908 (Tex. Crim. App. 1988).

 In the indictment for Cause No. 97-CR-5817, Flores was charged with intoxication
manslaughter under Count I and with manslaughter under Count II. In the jury charge, the jury was
first instructed on the intoxication manslaughter charge and then on the manslaughter charge. As
a result, Flores's conviction for intoxication manslaughter is his first conviction and the conviction
for manslaughter is his second conviction. Accordingly, we will uphold Flores's conviction for
intoxication manslaughter and vacate his conviction for manslaughter.

Sufficiency of the Evidence

 In his second issue, Flores contends the evidence is legally and factually insufficient to
support his conviction for failing to stop and render aid. To review a challenge about the legal
sufficiency of the evidence, the court of appeals reviews the evidence in the light most favorable to
the verdict to determine whether any rational trier of fact could have found the essential elements
of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319; Mosley v. State,
983 S.W.2d 249, 254-255 (Tex. Crim. App. 1998), cert. denied, 119 S.Ct. 1466 (1999). In
conducting this review, the jury serves as the exclusive judge of the credibility of witnesses and of
the weight to be given their testimony; and therefore, reconciliation of conflicts in the evidence is
within the exclusive province of the jury. Mosley, 983 S.W.2d at 254-255. Applying that standard
here, we find that the evidence is legally sufficient to support Flores's conviction for failing to stop
and render aid.

 In the indictment, the State alleged that Flores failed to stop and render aid to the driver of
the other vehicle, in part, when "it was then and there apparent that such medical treatment . . . was
. . . necessary as a result of said accident and said injuries." Flores argues that the State failed to
prove that medical treatment was necessary because everyone who saw the victim knew immediately
that he was dead and that medical treatment would not help. Although Flores recognizes that a
Texas court of appeals has held that a defendant has a duty to remain at the scene even if the victim
has died, he argues that the decision does not control here because the victim died instantly. But
when viewed in the light most favorable to the verdict, the evidence does not prove that Johnston
died instantly. 

 State's witness Paul Dixon observed the accident that resulted in the death of Edward
Johnston. Dixon testified that after observing Flores's vehicle weave erratically, he observed the
vehicle hit the vehicle driven by Johnston. He testified that Johnston's vehicle flipped and rolled,
causing Johnston to be ejected from the sunroof, and that Flores's vehicle went into the grassy
median of the highway. Dixon stated that he stopped his own vehicle and went to render aid to
Johnston, who was lying face down. Although Dixon testified that there was no doubt in his mind
that Johnston was going to expire, he also testified that he confirmed that Johnston had a pulse.
Dixon further stated that while attending to Johnston, he heard Flores's vehicle accelerating to leave
and that he rushed to stop the vehicle. Dixon explained that although he was pushed aside by
Flores's vehicle, he was able to obtain the number of the license plate of Flores's vehicle.

 In addition to Dixon's testimony, State's witness Phil Laws, a paramedic, testified that he and
his partner arrived at the scene shortly after the accident. Laws testified that upon reaching the
patient, Johnston, he observed obvious signs of death. He stated that he observed a 2-3 inch gap in
Johnston's skull and exposed brain matter. He stated that he also observed that Johnston was
"ashen" like many patients after they have "bled out," indicating that Johnston had laid there for a
while. Laws explained that although he checked for a pulse and determined that Johnston was dead,
he could not determine that Johnston was dead until he got up close. This evidence is sufficient for
a reasonable trier of fact to have found that "it was then and there apparent that such medical
treatment . . . was . . . necessary as a result of said accident and said injuries," and as a result, it is
legally sufficient to support the conviction. We next consider whether the evidence was factually
sufficient to support the conviction.

 In a factual sufficiency challenge, the reviewing court reviews all evidence without the prism
of "in the light most favorable to the prosecution" and sets aside the verdict only if it is so contrary
to the overwhelming weight of evidence as to be clearly wrong and unjust. Clewis v. State, 922
S.W.2d 126, 129 (Tex. Crim. App. 1996). Viewed this way, the evidence demonstrates a probability
that Johnston died instantly as a result of the accident. Laws speculated that Johnston "probably died
immediately" whenever his head impacted whatever it hit. Laws's partner, paramedic Allan Jackson,
testified that he had to pull Johnston from underneath his vehicle to attend to him and that he
observed that Johnston's head was split open, exposing brain matter. Nonetheless, Jackson testified
that under such circumstances, he checks for a pulse and to determine if the patient is breathing.
Jackson further stated that Johnston did not have a pulse and he was not breathing, so he terminated
treatment efforts. While this evidence tends to indicate that "medical treatment . . . was [NOT]. .
. necessary as a result of [the] accident and [Johnston's] injuries," the verdict is not so contrary to
the overwhelming weight of evidence as to be clearly wrong and unjust. No one who was present
at the time of the accident testified that Johnston died instantly or could confirm that medical
assistance was not necessary to sustain Johnston's life. The evidence was uncontroverted that
Flores's vehicle struck Johnston's vehicle, and that rather than rendering aid to Johnston, Flores fled
the scene of the accident. The evidence is factually sufficient to support the conviction. We overrule
Flores's second issue.

Admission of the Video Tape

 Through the assistance of Dixon and a driver who pursued Flores when he fled, police
officers we able to quickly identify Flores as the driver of the other vehicle and to go to his home.
One of the officers who responded to Flores's home was a DWI Task Force officer whose patrol car
was equipped with a video camera. After police officers told Flores why they were there, the DWI
officer turned on the video camera. The resulting video tape captures the conversation that
transpired between the officers, Flores, and Flores's wife who assisted in translating between Flores,
a primary Spanish-speaker. Although Flores attempted at trial to exclude the audio portion of the
video, the trial court ultimately admitted the entire video tape into evidence. Flores contends that
the admission of the audio portion of the tape was error because the tape reflects that he asked to
speak to a lawyer, and that at one point, the officers told him that he did not need to speak to a
lawyer and that he could not call a lawyer. Flores argues that because the officers were required to
stop questioning him once he invoked his right to counsel, the audio portion of the tape was
inadmissible.

 The United States Supreme Court has determined that a person in police custody must
unambiguously and unequivocally invoke his right to counsel before the police must cease
interrogation. Davis v. United States, 512 U.S. 452, 458-61 (1994). The Court specifically rejected
the idea that police were prevented from questioning a suspect who might want a lawyer. Davis, 512
U.S. at 462. Although the Court recognized that "requiring a clear assertion of the right to counsel
might disadvantage some suspects who-because of fear, intimidation, lack of linguistic skills, or a
variety of other reasons-will not clearly articulate their right to counsel although they actually want
to have a lawyer present," the Court reasoned that the Miranda warnings would dispel whatever
coercion is inherent in the interrogation process itself. Davis, 512 U.S. at 461. 

 In the instant case, the police advised Flores that they wanted to look at his vehicle because
it had been reported to have been in an accident. They told Flores that he could either consent to a
search of his vehicle or that they would stay at his house until they obtained a search warrant. The
police also explained that they would have to first explain his rights to him. In response, Flores
responded in Spanish, "Will you allow me to speak to my attorney before?" Flores used the Spanish
word "abogodo" to mean "attorney." A Spanish-speaking officer responded, "Wait, wait," and
proceeded to advise Flores of his Miranda rights using a card which used the word "licenciado" to
mean lawyer. The officer later testified that he did not understand the word "abogodo" as meaning
lawyer. Despite the indication that the officer may not have understood Flores's question, we are
not convinced that Flores affirmatively invoked his right to counsel.

 After the officer finished reading the Miranda warnings, an officer asked Flores if he wanted
to go downtown to provide a statement and whether he would consent to the officers searching the
garage. Flores ultimately signed the consent form, but it was not until later that Flores asked to call
his attorney. After entering the house to use the restroom and returning, the DWI officer
administered a series of DWI field sobriety tests. At first Flores indicated that he would talk to his
attorney on the following day, but then he stated that he wanted to talk to his attorney right then. An
officer assured Flores that he could call his attorney if he wanted. But instead of calling an attorney,
Flores attempted to tell the officers what had occurred. The officers told Flores that he needed to
provide his statement to the investigating detective downtown. Flores went back into the house to
put on some shoes and then left for the police station. He did not call an attorney. Rather than
reflecting a clear and unequivocal invocation of his right to an attorney, these events reflect
indecisiveness about whether to talk to an attorney. Although Flores asks us to interpret his initial
question, "Will you allow me to speak to my attorney before?," as the invocation of his right to an
attorney, the question is neither clear nor unequivocal about his desire to speak to an attorney.
Because Flores never affirmatively stated that he wanted to speak to an attorney, we overrule Flores
issue concerning the audio portion of the video tape.

Ineffective Assistance of Counsel

 In his final issue, Flores contends that his attorney was ineffective for failing to preserve error
on the admission of the audio portion of the video tape. Although the attorney stated that he had no
objection to the admission of the tape in its entirety at the time the State sought its admission, the
attorney had sufficiently preserved his complaint by having obtained a pretrial ruling to suppress the
audio portion of the tape. Although Flores's attorney should have objected when the trial court later
reversed the ruling, the attorney had nonetheless squarely presented the objection to the trial court.
In light of our disposition of Flores's complaint concerning the admission of the tape, we need not
consider this issue further. We overrule the issue.

Conclusion

 Having sustained Flores's double jeopardy issue, we reform the trial court's judgment in
Cause No. 97-CR-5817 to reflect a single conviction for intoxication manslaughter, and not for
manslaughter. We also note that the judgment in Cause No. 97-CR-5817 incorrectly reflects the
offense as "involuntary manslaughter" instead of "intoxication manslaughter." As a result, we
reform the judgment in Cause No. 97-CR-5817 to reflect "intoxication manslaughter" versus
"involuntary manslaughter." We affirm the judgment in Cause No. 97-CR-5817 as reformed.
Having overruled each of Flores's issues concerning his conviction for failing to stop and render aid,
we affirm the judgment in Cause No. 98-CR-0104.


 Alma L. López, Justice

PUBLISH


1. Flores's conviction in Cause No. 97-CR-5817 is the subject of his appeal in Cause No.04-99-00028-CR .
2. Flores's conviction in Cause No. 98-CR-0104 is the subject of his appeal in Cause No. 04-99-00029-CR.
3. Compare Tex. Pen. Code Ann. § 49.08 (Vernon Supp. 2000) (classifying intoxication manslaughter as a
second degree felony), with Tex. Pen. Code Ann. § 19.04 (Vernon 1994) (classifying manslaughter as a second degree
felony).