Opinion issued August 21, 2009 
 













    


In The
Court of Appeals
For The
First District of Texas
____________

NO. 01-07-00690-CR
____________

MICHAEL MBUGUA, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 339th District Court
 Harris County, Texas
Trial Court Cause No. 1068887



 
O P I N I O N

          A jury convicted appellant, Michael Mbugua, of the offense of murder and 
assessed punishment at life in prison. See Tex. Penal Code Ann. § 19.02(b)(1)
(Vernon 2003). We determine whether (1) the trial court abused its discretion in
failing to suppress appellant’s statement; (2) this appeal should be abated and the trial
court required to submit findings of fact and conclusions of law regarding the denial
of appellant’s motion to suppress; (3) the trial court erred in not submitting a jury
instruction pursuant to article 38.23 of the Texas Code of Criminal Procedure;


 and
(4) the exclusion of portions of appellant’s medical records from evidence was
reversible error. We affirm.Facts

          Kimberly Watkins and Blair Brown were driving westbound on West Bellfort
in Houston, Texas, on the night of May 13, 2006, when they saw the complainant
lying facedown in the road. They stopped at an Auto Zone store parking lot, and
Watkins exited the car to help the complainant. When Watson approached him, she
saw that he was covered in blood. She bent down to check on him and touched his
neck. He was breathing and making a humming sound, but was not moving or
speaking and did not respond to her. Watson stood up and waved her arms to deter
cars from accidentally hitting him, turning around occasionally to check on the
complainant. Brown was trying to call 9-1-1; she had borrowed a cell phone from a
Pizza Hut delivery driver in the same parking lot, but the phone was not working
properly. Within a minute or so, Watson saw a young man come across the street and
approach the complainant, and she asked him if the complainant “was okay.” He did
not answer her and, when she turned, she saw him stabbing the complainant with a
knife—first in the back about five times, and then lifting the complainant’s head and
slitting his throat twice. Brown also saw the attack. The man then stepped back
calmly, dropped the knife, and slowly walked away. According to Brown and
Watson, the complainant did not have a weapon. After the assault, other cars
stopped, and Brown was able to borrow another person’s cell phone and place a call
to 9-1-1. 
          After the ambulance arrived, Watson noticed a vehicle across the street in
someone’s front lawn, as if an accident had occurred. The vehicle was on the
opposite side of the street from the Auto Zone and on the same side of the street from
whence the assailant had come. 
          The complainant, later identified as Bruce Caldwell Jr., died from his injuries.
Brown and Watson were able to give a description of the assailant to the police, but
neither was able to identify him from a police photographic spread.
          Houston Police Department Sergeant Mark Newcomb investigated the murder
scene and noticed that a car had driven up onto a nearby lawn, hitting some
landscaping in the yard. The keys were still in the car, the passenger side door was
open, and there was blood in the car and a trail of blood leading from the car to the
spot on the street where the complainant was attacked. Two knives were recovered
from the scene, and another was later found in the car.


 A piece of human finger was
later recovered from the driver’s seat of the vehicle. 
          Newcomb determined that the wrecked vehicle was registered to appellant and
went to appellant’s home around 2:30 a.m. on the same night of the incident, but did
not find him. The next day, Newcomb spoke to appellant by telephone. At that time,
appellant was at his parents’ home, being treated by emergency medical technicians
for an injury to his hand. Appellant agreed to make a statement and was transported
by the police to the Homicide Division, where appellant gave a videotaped oral
statement regarding the incident. 
          In his statement, appellant explained that he and the complainant had been
traveling to Wal-Mart in appellant’s car, which appellant was driving. He and the
complainant were talking about business, but appellant felt that, “between the lines,”
the complainant was talking about how he was going to kill appellant. 
          Appellant said that he and the complainant had been partners in the music
business,


 but the complainant had broken the partnership by trying to kill him. 
According to appellant, the complainant had felt it necessary to put a price on
appellant’s head, had “a lot of people . . . coming to [appellant’s] house trying to kill”
appellant, and had told appellant that he was going to kill him, his mother was going
to kill him, his father, a police officer,


 was going to kill him, and other people were
going to kill him. The complainant had threatened appellant periodically over the
previous few weeks. Appellant carried two knives in his car for personal protection. 
Appellant never reported these threats to the police.  
          The night of the incident, appellant and the complainant “got into an
altercation” and appellant “had to pull out [his] knife.” He did not know if the
complainant had a weapon; he did not see one. Appellant stabbed the complainant
twice in the arm or shoulder. During the scuffle, the complainant cut appellant,
injuring him. The complainant grabbed the steering wheel, he turned the car into the
yard, and they hit a curb. The complainant then jumped out of the car and ran. 
Appellant followed the complainant into the median to find out what was wrong with
him, to see if he was all right, and to help him; he made it within a few feet of the
complainant, but ran when he heard someone rack a shotgun. He kept running
because he was afraid that someone was trying to kill him and he walked all night,
finally arriving at his parents’ house. He expressed surprise in learning from the
interviewing officer that the complainant was dead, said, “Damn,” repeatedly, and
asked, “So, what am I looking at?” When the officer asked appellant why he stabbed
the complainant in the median, he answered, “I don’t even remember,” and when the
officer asked appellant if he did not remember stabbing the complainant after leaving
the car, appellant answered, “Damn.” 
          After the interview, Newcomb went down to the second floor of the same
building, signed a formal complaint charging appellant with murder, and then, once
the complaint went to the clerk’s office, arrested appellant, who was booked in and
charged with murder. 
          Appellant filed a motion to suppress the oral statement, which was denied after
a hearing. The videotaped oral statement was played to the jury at appellant’s trial,
over appellant’s objection.


 At trial, appellant asserted a claim of self-defense and
called two witnesses. The first was his mother, who testified about appellant’s fear
that the complainant was going to kill him, his arrival at home in the early hours on
the morning after the incident, and police actions on the night of the incident and the
following morning, as they searched for appellant at his home and ultimately took
him to the police station to make a statement. His second witness was Dr. Vincent
Di Maio, a forensic pathologist, who testified that the complainant was likely killed
by the wound to the heart, not the wounds to the neck, and that appellant’s wounds
were consistent with being defensive wounds.


 Appellant did not testify.
Denial of Appellant’s Motion to Suppress
          In his first issue, appellant contends that the trial court erred by denying his
motion to suppress his statements because appellant was in custody and “had clearly
invoked his right to an attorney, in violation of state law and the Constitution.” In his
third issue, appellant contends that the trial court erred in failing to suppress his
statement “because he was in custody at the time it was given and he was not given
his Miranda[


] warnings in violation of state law and Constitution.” 

A.     The Motion to Suppress
          Appellant filed a motion to suppress any statements made by him,


 asserting
that:
(1)     any conversations between himself and law enforcement officials
occurred when he was under arrest or substantially deprived of
his freedom by law enforcement officials;
 
(2)     any statements made were involuntary, coerced, and enticed; 
 
(3)     he was deprived of his right to counsel and did not make an
intelligent and knowing waiver of that right; 
 
(4)     his statements were tainted by an illegal and unlawful detention
in violation of his constitutional rights under “the Fifth and
Fourteenth Amendments of the Constitution to the United States,
Article 1, Section 9 of the Texas Constitution, and Article 38.23
of the Texas Code of Criminal Procedure”; 
 
(5)     his statements “were taken without the safeguards required by and
in violation of Article 38.22 of the Code of Criminal Procedure”;
and 
 
(6)     the admission of his statements “is a violation of [appellant’s]
rights pursuant to the Fourth, Fifth, Sixth, and Fourteenth
Amendments to the United States, Constitution, Article I,
Section[s] 9 and 10 of the Texas Constitution and Articles 1.05
and 38.23 of the Texas Code of Criminal Procedure.” 
 
          The trial court held a hearing on the motion, at which the State called four
witnesses—Darryl Smith, Hilario Galvan, Anthony Wayne Duncan, and Newcomb.
Appellant called his father, Joe Mbugua. The court also had before it the videotape
of the interview, a transcript of the same, and several photographs that had been
admitted into evidence.
          At the conclusion of the evidence, the State argued that the requirements of
article 38.22 did not apply because appellant had not been under arrest until after he
made his initial admissions, at which point the officer gave appellant his article 38.22
warnings. The defense argued that appellant was in custody the entire time and
invoked his right to an attorney or, alternatively, that appellant was initially not in
custody, but was in custody when he arrived at the police station. 
          After further arguments about custody and the invocation of the right to
counsel, the court stated to appellant’s counsel, “I think succinctly you’re arguing he
was in custody at the time he’s making statements about the lawyer, and, therefore,
it constitutes an invocation of his right. The State’s position is he was not in custody
at the time that he made the statements about the lawyer, so the Court doesn’t need
to reach the question as to whether it was an invocation or not at that point.” The
defense responded, “Right,” as did the State. Appellant concluded by saying that the
final portion of his argument was that appellant invoked his right to counsel, but that
the police improperly kept asking questions after such invocation, instead of stopping
the interrogation.
          The trial court then denied the motion to suppress, making the following
statements:
The Court finds that [appellant] . . . was not in custody at the time that
he was taken in to the Homicide department, was not in custody at the
beginning of the conversation—the questioning that occurred at the
beginning of the videotape. And I also find, just so the record is clear,
that his question about . . . could he wait for his lawyer did not constitute
an invocation of right to counsel. So, furthermore, the Court therefore
finds that the requirements of Article 38.22 of the Code of Criminal
Procedure, at the time they were given, [appellant], that he understood
those rights—that he voluntarily gave those rights up and voluntarily
gave the statement. And I think my—my statement that, “Can I wait
until my lawyer gets here,” not being an invocation of right to counsel
applies as well to the statement made by [appellant] when he is making
the same inquiry on page 14 [of the transcript] when he is being given
his legal warnings. All right. The statement will be admitted.
 
B.     Invocation of Right to Counsel
          Under the Fifth Amendment of the United States Constitution, an accused has
the right to have an attorney present during custodial interrogation. Edwards v.
Arizona, 451 U.S. 477, 482, 101 S. Ct. 1880, 1883 (1981) (noting that that right was
first declared in Miranda decision). Once an accused has invoked that right, police
interrogation must stop until counsel has been made available or the accused himself
initiates a dialogue with the police. Id. at 484–85, 101 S. Ct. at 1884–85; State v.
Gobert, 275 S.W.3d 888, 892 (Tex. Crim. App. 2009).
          However, a person in custody must unambiguously and unequivocally invoke
his right to counsel before interrogation must cease. Davis v. United States, 512 U.S. 
452, 458–61, 114 S. Ct. 2350, 2355–56 (1994). Not every mention of a lawyer will
invoke the right to the presence of counsel during questioning. Gobert, 275 S.W.3d
at 888; Dinkins v. State, 894 S.W.2d 330, 351 (Tex. Crim. App. 1995). An
ambiguous or equivocal statement regarding counsel does not require officers to halt
the interrogation or even to seek clarification. Davis, 512 U.S. at 461–62, 114 S. Ct.
at 2356; Gobert, 275 S.W.3d at 892.
          Whether the particular mention of an attorney constitutes a clear invocation of
the right to counsel depends on the statement itself and the totality of the surrounding
circumstances. Gobert, 275 S.W.3d at 892. The test is an objective one: “whether
a reasonable police officer, under similar circumstances, would have understood the
statement to be a request for an attorney or merely one that might be invoking the
right to counsel.” Reed v. State, 227 S.W.3d 111, 116 (Tex. App.—Houston [1st Dist. 
2007, pet. ref’d) (citing Dinkins, 894 S.W.2d at 351). “The suspect ‘must articulate
his desire to have counsel present sufficiently clearly that a reasonable police officer
would understand the statement to be a request for an attorney.’” Gobert, 275 S.W.3d
at 893 (quoting Davis, 512 U.S. at 459, 114 S. Ct. at 2350). 
          The statement that appellant asserts on appeal was an invocation of his right
to counsel


 occurred at the beginning of the interview in the following exchange with
Newcomb, after Newcomb had confirmed that appellant did not need immediate
medical care, had had an opportunity to use the bathroom and have a drink of water,
understood that he was not under arrest, and wanted to speak with the police:
          [Newcomb]:          Okay. So you are not under arrest. We just want to
get your side of the story on what happened, okay?
 
          [Appellant]:           Okay.
 
          [Newcomb]:          And so, do you—you want to continue to talk to us
and speak with us; is that correct?
 
          [Appellant]:           Can I wait until my lawyer gets here?
 
          [Newcomb]:          Okay. If—if you want to talk to a lawyer, we’ll have
to cut off the interview right now. We can’t ask you
anything else. We can’t speak to you anymore, and
you will not have an opportunity to give your side of
the story. 
 
          [Appellant]:           Then what’s going to happen?
 
          [Newcomb]:          I’m sorry?
 
          [Appellant]:           What’s going to happen?
 
          [Newcomb]:          Well, from that point I’ll have to go make some
phone calls, and I’ll get back with you. But if you
are refusing to speak with us and you want an
attorney, if that’s what you’re saying, then we’re
going to get up, we’re going to walk out of this room
and that’s what—the end of the conversation. Now
you are not under arrest at this time. So you don’t
have to have an attorney if you are not under arrest,
okay? So—
 
          [Appellant]:           Can I call my parents so I can [sic] I feel more
comfortable talking to my parents here because they
know—they know the story too. 
 
          Appellant argues that the question, “Can I wait until my lawyer gets here,” was
an unequivocal and unambiguous request for counsel, during a custodial
interrogation. He contends that, therefore, the police should have ceased questioning
him at that point and that the additional questioning was an improper attempt to
coerce a statement from him.
          The State argues that appellant did not clearly invoke his right to counsel and,
even if he had, appellant was not in custody at the time and therefore the police were
not required to cease questioning. The State also argues that, although not required
to, the police followed the ambiguous statement with questions seeking to clarify
whether appellant wanted an attorney, and appellant did not state that he wanted
counsel, but instead confirmed that he wanted to keep talking to police.
          We hold that the statement at issue was not a clear and unambiguous
invocation of the right to counsel. An accused “must unambiguously request counsel”
and “a statement either is such an assertion of the right to counsel or it is not.” Davis,
512 U.S. at 459, 114 S. Ct. at 2355. If the statement does not meet the required level
of clarity, then officers are not required to stop questioning. Id.
          Appellant has referred us to the Court of Criminal Appeal’s decision in Gobert. 
In Gobert, after the police had read Gobert his article 38.22 rights and asked if he
understood them, Gobert replied that he did, and then stated, “I don’t want to give up
any right, though, if I don’t got no lawyer.” Gobert, 275 S.W.3d at 889–90. The
Court of Criminal Appeals held that Gobert’s use of the term “any right” referred to
the article 38.22 rights just read to him, which included the right to counsel, and that
the entire statement expressed Gobert’s clear desire not to waive any rights in the
absence of counsel. Id. at 893. The Court held that such statement was a limited
invocation of the right to counsel, “clearly stating” a “firm and unqualified condition”
that, before any further attempts to persuade Gobert to waive any other rights, the
officers must first afford him the right to have his attorney present during that
attempt. Id. at 894. The Court held that the officers had violated Gobert’s right to
counsel when they failed to abide by this “unambiguous and unqualified condition.”
Id.  
          By contrast, appellant’s question, “Can I wait until my lawyer gets here?” did
not clearly state a firm, unambiguous, and unqualified condition that any further
questioning must be conducted only with his attorney present. Appellant’s question,
both by the language used and in the context of the totality of the circumstances, was
not a clear and unambiguous assertion of the right to counsel and an exercise of that
right, but was more in the nature of an inquiry about the interview process and
appellant’s options in regard to that process. Newcomb understood the question as
such and responded accordingly, explaining what would happen in the process if
appellant wished to “wait” and to talk to his lawyer. Appellant’s question was, at
best, an ambiguous articulation of a desire for counsel.


 See Davis, 512 U.S. at 462,
114 S. Ct. at 2357 (holding that statement, “Maybe I should talk to a lawyer” was not
request for counsel); Gutierrez v. State, 150 S.W.3d 827, 832 (Tex. App.—Houston
[14th Dist.] 2004, no pet.) (deciding that question, “Can I have [my attorney] present
now?” was ambiguous question about counsel); Halbrook v. State, 31 S.W.3d 301,
302 (Tex. App.—Fort Worth 2000, pet. ref’d) (determining that statement, “Do I get
an opportunity to have my attorney present?” did not constitute clear and
unambiguous invocation of counsel); Flores v. State, 30 S.W.3d 29, 34 (Tex.
App.—San Antonio 2000, pet. ref’d) (holding that question, “Will you allow me to
speak to my attorney before?” was not clear and unequivocal invocation of right to
counsel).
          Having concluded that appellant’s question did not clearly and unambiguously
invoke the right to counsel, we hold that trial court did not abuse its discretion in not
granting appellant’s motion to suppress on this basis. We overrule appellant’s first
issue.



C.      Failure to Give Miranda Warnings
          The State contends that appellant failed to preserve his contention under his
third issue, regarding the failure of the police to give appellant his Miranda warnings,
because appellant did not specifically direct the trial court’s attention to the failure
to give article 38.22 warnings as a basis for suppression in either his motion to
suppress or at the motion-to-suppress hearing, but instead only pursued his claim as
a violation of his invocation of counsel while in custody. The State argues that, at the
conclusion of the motion-to-suppress hearing, appellant asked the trial court to decide
only whether he was in custody and had invoked his right to counsel, in effect
abandoning any other grounds for suppression listed in the motion. 
          We first note that the videotape and the transcript of the interview indicate that
appellant received the required Code of Criminal Procedure article 38.22 warnings
after he had made some initial inculpatory admissions and prior to more detailed
questioning. The only issues then, regarding the provision of any required warnings
are whether the police were required to give appellant such warnings at an earlier
time than was actually done; if so, when that should have been done; and if there were
any incriminating statements made after that time that should have been suppressed. 
          Appellant did not bring such a contention to the attention of the court, either
in his motion to suppress or during the oral hearing, nor did he ask the court to decide
these questions and issue a ruling thereon. His motion failed to preserve his
contention on appeal because it did not alert the trial court that he wished the issue
to be decided; rather, the motion stated that the rights encompassed in these warnings
were violated and that his oral statements were taken “without safeguards.” These
general statements in the motion would not have alerted the trial court to the specific
complaint that his article 38.22 warnings should have been provided at an earlier
point in the interview, and they do not comport with the issue on appeal. See Tex.
R. App. P. 33.1(a)(1) (requiring, in order to preserve error, sufficient specificity to
make trial court aware of complaint and ruling by court on complaint); Broxton v.
State, 909 S.W.2d 912, 918 (Tex. Crim. App. 1995) (holding that issue on appeal
must comport with complaint made at trial). Appellant likewise did not bring the
issue of the delay in the article 38.22 warnings to the trial court’s attention at the
motion-to-suppress hearing or at trial. Appellant’s sole focus and argument to the
trial court at the motion-to-suppress hearing was that he was in custody, had invoked
his right to counsel, and was improperly questioned after having done so. When the
videotaped oral statement was offered into evidence at trial, defense counsel asked
to approach the bench. The court asked if appellant “had any additional objections
other than the ones already made,” and counsel responded, “No, I just wanted to make
sure it was clear that I wasn’t waiving any of my previous objections.” Because
appellant did not object to the admission of his statement based on the failure of the
police to provide required warnings at an earlier time, either at the suppression
hearing or at the time of trial, and did not secure a ruling on such a complaint, he did
not preserve error as to this issue. See Tex. R. App. P. 33.1(a)(1); Swain v. State, 181
S.W.3d 359, 365 (Tex. Crim. App. 2005) (concluding that, when appellant failed to
object to admission of statement at motion-to-suppress hearing on ground for
suppression raised on appeal, but instead, argued a different basis for suppression,
issue was not preserved); Johnson v. State, 263 S.W.3d 287, 290 (Tex.
App.—Houston [1st Dist.] 2007, pet. dism’d) (same).
          We hold that this contention was not preserved and decline to address it. We
overrule appellant’s third issue.
Abatement for the Preparation of 
Findings of Fact and Conclusions of Law

          In his second issue, appellant asserts that the trial court erred in not submitting
written findings of fact and conclusions of law regarding its ruling on his motion to
suppress.
          As detailed previously, the trial court made a statement of its findings and
conclusions at the close of the motion-to-suppress hearing. Following these remarks,
appellant’s counsel commented to the court, “I think it has to be on the record that we
have—we are entitled to do specific findings of fact and conclusions of law. So I just
want to get that on the record.” The court responded, “Well, I think you’re certainly
entitled to those. And I think that will be an interesting issue for you if it gets that
far.” Appellant’s counsel replied, “Correct. Thanks, Judge. That’s all I have.” No
proposed findings of fact or conclusions of law appear in the record, nor is there any
formal written order containing findings of fact or conclusions of law.
          Appellant asserts on appeal that the trial court was required to enter written
findings of fact and conclusions of law pursuant to Texas Code of Criminal Procedure
article 38.22, section 6. See Tex. Code Crim. Proc. art. 38.22, § 6 (Vernon 2005). 
Appellant requests that we abate this appeal and order the trial court to issue such
findings. See Urias v. State, 155 S.W.3d 141, 142 (Tex. Crim. App. 2004) (holding
that when trial court fails to make findings of fact and conclusions of law required by
article 38.22, section 6, proper procedure is for reviewing court to direct trial court
to comply with this provision). The State asserts that, because appellant did not
argue that his statement was involuntary during the suppression hearing, the trial
court was not required to make findings under article 38.22, section 6. See Jones v.
State, 859 S.W.2d 537, 540–41 (Tex. App.—Houston [1st Dist.] 1993, pet. ref’d)
(holding that trial court was not required to make finding under section 6 of article
38.22 when appellant did not make objection as to voluntariness of statement).
          Section 6 of article 38.22 provides, in relevant part:
In all cases where a question is raised as to the voluntariness of a
statement of an accused, the court must . . . . [i]f the statement has been
found to have been voluntarily made and held admissible as a matter of
law and fact by the court . . . enter an order stating its conclusion as to
whether or not the statement was voluntarily made, along with the
specific facts upon which the conclusion was based, which order shall
be filed among the papers of the cause.
 
Tex. Code Crim. Proc. Ann. art. 38.22, § 6.
          A trial court satisfies this requirement of article 38.22, section 6 when it
dictates its findings of fact and conclusions of law to the court reporter and they are
subsequently transcribed and made part of the appellate record. Murphy v. State, 112
S.W.3d 592, 601 (Tex. Crim. App. 2003); Vasquez v. State, 179 S.W.3d 646, 654
(Tex. App.—Austin 2005), aff’d, 225 S.W.3d 541 (Tex. Crim. App. 2007). This the
trial court did. On appeal, appellant does not challenge the sufficiency of the trial
court’s oral statements to serve as the required conclusions and findings; he
complains only that the trial court did not enter written findings. We conclude that
the trial court’s dictation of its findings of fact and conclusions of law to the court
reporter, which are now part of the appellate record, satisfied the requirement of
article 38.22, section 6. See Murphy, 112 S.W.3d at 601.
           We overrule appellant’s second issue. 
Jury Instruction
          In his fourth issue, appellant contends that the trial court erred in failing to give
an instruction to the jury, pursuant to article 38.23(a) of the Texas Code of Criminal
Procedure,


 that would have required the jury to determine whether appellant was in
custody at the time that he gave his statement. 
          At trial, appellant specifically requested the trial court to include “a 38.23
charge involving the factual issue of whether or not [appellant] was in custody at the
time that he arrived at the Houston Police Department for his statement . . . . [a]nd if
he was in custody and did not receive Miranda [warnings], that the jury be instructed
to disregard the statement in its entirety.” He also tendered a proposed charge. The
State responded that there was no dispute as to any factual issue. The trial court then
explained that custody was a term of art, a mixed question of law and fact, and did not
“boil[] down to a fact determination turning on a particular fact,” discussed the
evidence regarding custody, found that it did not raise an issue with respect to
whether appellant was in custody, and denied the proposed instruction and any
instruction under article 38.23.  
          On appeal, appellant acknowledges that he was entitled to an instruction under
article 38.23(a) “only if the trial evidence raised a factual issue concerning whether
the evidence was obtained in violation of the federal constitution or the Texas
Constitution or any of its laws,” quoting Bell v. State, 938 S.W.2d 35, 48 (Tex. Crim.
App. 1996). He asserts that the testimony of his mother, that she told the paramedics
that she wanted to take appellant to the emergency room and that the police told her
that she could not do that, raised a factual issue as to whether appellant was actually
“in custody,” entitling him to an instruction under article 38.23(a).
          An accused’s right to the submission of an instruction under article 38.23(a)
“is limited to disputed issues of fact that are material to his claim of a constitutional
or statutory violation that would render evidence inadmissible.” Madden v. State, 242
S.W.3d 504, 509–10 (Tex. Crim. App. 2007). 
          Before an accused is entitled to the submission of a jury instruction under
article 38.23(a), he must meet three requirements:
          (1)     The evidence heard by the jury must raise an issue of fact;
          (2)     The evidence on that fact must be affirmatively contested; and
          (3)     That contested factual issue must be material to the lawfulness of
the challenged conduct in obtaining the evidence.

Id. at 510.
          “The first requirement for obtaining a jury instruction under Article 38.23, is
that the defendant request an instruction on a specific historical fact or facts. The jury
decides facts: the judge decides the application of the law to those facts.” Id. at 511.
There must be a genuine dispute about a material issue of fact before an article 38.23
instruction is warranted; if there is no disputed fact issue, the legality of the conduct
is determined by the trial court alone, as a question of law. Id. at 510. In order for
there to be a conflict in the evidence that raises a disputed fact issue, there must be
some affirmative evidence in the record that puts the existence of that fact in
question. Id. at 513. Furthermore, if other facts, not in dispute, are sufficient to
support the lawfulness of the challenged conduct, then the disputed fact issue is not
material to the ultimate admissibility of the evidence and is not to be submitted to the
jury. Id. The disputed issue must be essential to deciding the lawfulness of the
challenged conduct. Id. at 511.
           There was no error in the jury charge from the absence of any article 38.23(a)
instruction regarding custody because there was no conflict in the evidence raising
a disputed fact material to the question of custody that would have mandated an
article 38.23(a) instruction. Appellant’s mother’s statements to the paramedics and
the police officer’s response were not in dispute at trial. The State did not introduce
any affirmative evidence at trial contradicting this testimony, and the possibility that
the jury may or may not believe a witness does not create a factual dispute warranting
an article 38.23(a) instruction. Madden v. State, 242 S.W.3d 504, 514 n.26 (Tex.
Crim. App. 2007). Moreover, the proposed instruction did not charge the jury with
resolving a specific issue of historical fact, but asked it to determine whether
appellant was “in custody.” A jury may not be instructed under article 38.23(a) to
determine whether a person is “in custody” because such an instruction requires the
jury to resolve an issue of law, not of fact. See Thompson, 516 U.S. at 111–12, 113
n.13, 116 S. Ct. at 465, 465 n.13 (holding that “in custody” determinations presented
mixed question of law and fact; also stating that “[j]udges alone make ‘in custody’
assessments for Miranda purposes.”); accord Madden, 242 S.W.3d at 510–11, 13
(involving proposed article 38.23 instruction regarding “probable cause”). 
          We hold that there was no error in the trial court’s not providing an article
38.23(a) instruction to the jury. We overrule appellant’s fourth issue.Redacting of Medical Records
          In his fifth issue, appellant contends that the trial court erred in redacting
portions of his medical records for the treatment of his hand that referenced his
statements that the injuries had been sustained in a fight. 
          At trial, appellant called Dr. Vincent Di Maio, a forensic pathologist, to testify
about the wounds sustained by the complainant and those sustained by appellant. Di
Maio opined that the complainant died from the wound to the heart, not the wounds
to the neck. He also testified that if appellant’s medical records indicated that he
suffered incised wounds or the cutting off of a tip of a finger, those injuries would be
consistent with defensive injuries. Appellant attempted to introduce his medical
records, and the State objected to the hearsay in the document, including the
comment, “cut while fighting approximately 12 hours ago.” Appellant responded that
the comment fell under a hearsay exception for medical diagnosis or treatment. The
court admitted the document, conditioned on the court’s later ruling on the issue. Di
Maio then reviewed the records and testified that his opinion was that appellant’s
wounds were consistent with being defensive wounds. 
          At a later time, outside of the presence of the jury, the trial court granted the
State’s request to redact two phrases in the medical records, “while fighting” and
“following an altercation,” explaining that they were not necessary for medical
treatment and diagnosis. Appellant responded that he objected to the redaction on the
ground that the State had waived its objection to the statements’ being admitted by
its cross-examination of Di Maio. The court overruled the objection.
          We review a trial court’s decision to admit or to exclude evidence for an abuse
of discretion. Shuffield v. State, 189 S.W.3d 782, 793 (Tex. Crim. App. 2006). If the
ruling is within the bounds of reasonable disagreement, it should not be disturbed on
appeal. Id. The mere fact that a trial court may decide a matter within his
discretionary authority differently from an appellate judge in a similar circumstance
might does not demonstrate an abuse of discretion. Montgomery v. State, 810 S.W.2d
372, 380 (Tex. Crim. App. 1990). Rather, an abuse of discretion is shown when the
trial court’s ruling is “arbitrary or unreasonable,” made “without reference to any
guiding rules or principles.” Id.
          Texas Rule of Evidence 803(4) provides that the following statements are
admissible as an exception to the hearsay exclusionary rule:
Statements made for purposes of medical diagnosis or treatment and
describing medical history, or past or present symptoms, pains, or
sensations, or the inception or general character or the cause or external
source thereof insofar as reasonably pertinent to diagnosis or treatment.
 
Tex. R. Evid. 803(4).
          In order for statements to be admitted under rule 803(4), the proponent of the
evidence must show that (1) the declarant was aware that the statements were made
for the purposes of medical diagnosis or treatment and that proper diagnosis or
treatment depended on the veracity of the statement and (2) the particular statement
offered is also “pertinent to treatment,” that is, it was reasonable for the health care
provider to rely on the particular information in treating the declarant. Taylor v.
State, 268 S.W.3d 571, 589, 591 (Tex. Crim. App. 2008). 
          The trial court excluded the evidence in this case based on the second factor. 
Appellant argues on appeal that “knowing how an injury occurred assists in
treatment.” However, he has not explicated why it was important for his treatment
that the medical professionals know that he was cut in a fight, and he presented no
evidence or argument at trial establishing that such information was important to his
treatment. See id. at 591 (holding that it was appropriate to require proponent of
hearsay exception to make record reflect that statement in question was important to
efficacy of treatment). While the fact that appellant was cut was clearly pertinent to
his treatment, the fact that he was injured “while fighting” and “following an
altercation” was not. See Fleming v. State, 819 S.W.2d 237, 247 (Tex. App.—Austin
1991, pet. ref’d) (noting that “a patient’s statement that he was struck by an
automobile would qualify” under the rule 803(4) hearsay exception, but “his
statement that the car was driven through a red light” did not). The trial court acted
within the scope of its discretion in finding that appellant did not establish that the
statements “while fighting” and “following an altercation” were pertinent to his
treatment and that therefore appellant failed to establish that the statements fell within
the medical records hearsay exception. We hold that the trial court did not abuse its
discretion in redacting these statements from the medical records admitted into
evidence.     
          We overrule appellant’s fifth issue.
 

Conclusion
 We affirm the judgment of the trial court.
 
 
Tim Taft
Justice


Panel consists of Justices Bland, Sharp, and Taft.



Justice Sharp, concurring.
Publish. See Tex. R. App. P. 47.2(b).