**AFFIRM; and Opinion Filed March 5, 2024**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-23-00033-CR**

**THE STATE OF TEXAS, Appellant**
**V.**
**ANTHONY SIBRIAN, Appellee**

**On Appeal from the Criminal District Court No. 6**
**Dallas County, Texas**
**Trial Court Cause No. F21-75068-X**

## MEMORANDUM OPINION

Before Justices Molberg, Reichek, and Smith
Opinion by Justice Smith

The State of Texas appeals the trial court's order granting appellee Anthony Sibrian's pretrial motion to suppress statements he made during a custodial interrogation. In two issues, the State contends that the trial court erred in granting the motion because appellee (1) did not unambiguously invoke his right to interrogation counsel and (2) voluntarily waived his constitutional and statutory rights prior to making the statements. We affirm the trial court's order.

## Background

On January 14, 2021, appellee was taken into custody for questioning regarding the shooting death of his father. Dallas Police Detective Brian Tabor conducted a video-taped interview. During the interview, Detective Tabor read appellee his *Miranda*[1] warnings from a card and confirmed that appellee understood the warnings. Detective Tabor also confirmed that appellee understood what termination meant and that appellee could stop talking. Detective Tabor asked appellee if he was willing to continue talking. Appellee responded, "Could I get a lawyer first," and Detective Tabor said, among other things, that it was appellee's right to do so. Appellee asked whether his family members had been contacted, Detective Tabor responded "yea, I've talked to your family," and again asked appellee if he wanted to talk. Appellee answered, "just about my family members – who's coming and who's been contacted." Detective Tabor advised that he had spoken with appellee's aunt and thereafter continued the interview, asking questions about appellee, his family, and his father's death. Appellee responded to Detective Tabor's questions.

Thereafter, appellee was charged by indictment for his father's murder. In a pretrial hearing, appellee made an oral motion to suppress his statements to Detective Tabor after he advised appellee who in appellees' family had been contacted. The trial court held a hearing on the motion, and Detective Tabor was

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

the sole witness. After hearing the testimony and the arguments of counsel, the trial court granted the motion and subsequently signed a written order, consistent with its ruling, and made findings of fact and conclusions of law. This appeal followed.

**Motion to Suppress**

In its first issue, the State contends that the trial court erred in granting appellee's motion to suppress because appellee did not unambiguously invoke his right to interrogation counsel. In a second issue, the State asserts that appellee voluntarily waived his constitutional and statutory rights prior to answering Detective Tabor's questions. Appellee responds that he unambiguously invoked his right to counsel when he asked to "talk to a lawyer first" and never waived that right, but Detective Tabor ignored the invocation and "lured him into further discussion."

*1. Standard of Review*

We review a trial court's ruling on a motion to suppress under a bifurcated standard of review, where fact findings are reviewed for abuse of discretion and applications of law are reviewed de novo. *State v. Ruiz*, 581 S.W.3d 782, 785 (Tex. Crim. App. 2019). We give near total deference to the trial court's determinations of historical fact and to mixed questions of law and fact that turn on witness credibility when supported by the record. *See State v. Martinez*, 570 S.W.3d 278, 281 (Tex. Crim. App. 2019). We uphold the trial court's ruling if it is correct on any applicable theory and is reasonably supported by the record. *Ruiz*, 581 S.W.3d at 785.

## 2. *Invocation of the Right to Counsel*

The Fifth Amendment precludes the government from compelling a criminal suspect to bear witness against himself. U.S. CONST. amend. V; *Pecina v. State*, 361 S.W.3d 68, 74–75 (Tex. Crim. App. 2012). In *Miranda*, 384 U.S. at 441, the Supreme Court created safeguards to protect the privilege against self-incrimination. *Pecina*, 361 S.W.3d at 75. Before questioning a suspect, police must advise, among other things, that the suspect has the right to have counsel present during a custodial interrogation. *Miranda*, 384 U.S. at 444; *see also Edwards v. Arizona*, 451 U.S. 477, 481–82 (1981); *State v. Gobert*, 275 S.W.3d 888, 892 (Tex. Crim. App. 2009); TEX. CODE CRIM. PROC. ANN. art. 38.22, §§ 2, 3. A suspect's statement may be introduced into evidence against him at trial only if he voluntarily and intelligently waived his *Miranda* rights, including the right to interrogation counsel. *Pecina*, 361 S.W.3d at 75; *Jones v. State*, 119 S.W.3d 766, 772 (Tex. Crim. App. 2003).

A suspect's invocation of his right to counsel insulates him from any further police-initiated questioning, and the protection remains until the suspect both initiates further communications with police and validly waives his right to counsel. *Cross v. State*, 144 S.W.3d 521, 524, 527 (Tex. Crim. App. 2004) (citing *Edwards*, 451 U.S. at 485); *Gobert*, 275 S.W.3d at 892. This rule "protects the suspect—who has made the decision not to speak to law-enforcement officers without his lawyer and clearly communicated that decision to the police—from further police badgering." *Pecina*, 361 S.W.3d at 75; *Cross*, 144 S.W.3d at 528.

Not every mention of a lawyer is sufficient to invoke the right to counsel during questioning. *Gobert*, 275 S.W.3d at 892; *Bernard v. State*, No. 01-18-00876-CR, 2019 WL 6869328, at *4 (Tex. App.—Houston [1st Dist.] Dec. 17, 2019, pet. ref'd) (mem. op., not designated for publication) ("The use of the word 'attorney' or 'lawyer' does not, in and of itself, invoke the right to counsel."). Instead, a suspect's request for counsel must be clear and unambiguous in order to trigger the police's duty to terminate the interrogation. *Davis v. State*, 313 S.W.3d 317, 339 (Tex. Crim. App. 2010). An ambiguous or equivocal statement about counsel does not require law enforcement officers to halt their interrogation or even seek clarification. *Gobert*, 275 S.W.3d at 892. If a suspect makes a clear, but limited, invocation of the right to counsel, the police must honor the limits placed upon the interrogation, but may question the suspect outside the presence of counsel to the extent that his clearly-expressed limitations permit. *Id.* at 893.

To determine whether a suspect's statement constitutes an actual invocation of the right to counsel, courts look at the statement itself and the totality of the circumstances surrounding the statement. *Davis*, 313 S.W.3d at 339; *Gobert*, 275 S.W.3d at 892. The test is objective: "the suspect 'must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney.'" *Gobert*, 275 S.W.3d at 892–93 (quoting *Davis v. U.S.*, 512 U.S. 452, 459 (1994)).

3. *Analysis*

Detective Tabor began appellee's interview by asking general information questions for approximately eleven minutes.[2] Appellee stated that he was seventeen years old and a high school sophomore. He described himself as a poor student and noted that he repeated fourth grade after undergoing treatment for leukemia. Detective Tabor explained that he had not found any record of appellee having a criminal history, and appellee confirmed that he had no criminal history or prior arrests.

Detective Tabor then read appellee his *Miranda* warnings from a card. Detective Tabor handed the card to appellee and asked if appellee understood the warnings; appellee indicated that he did. Detective Tabor asked if appellee understood what "terminate" means, and appellee answered, "uh, end." Detective Tabor then explained, " . . . say we're talking, say you want to hear me out for a little while, and you want to quit talking, say 'I don't want to talk anymore.' That's termination, O.K.?" Appellee did not respond. Detective Tabor asked if appellee understood the rights that he read, and appellee responded affirmatively. Detective Tabor then asked, ". . . and are you willing to talk to me?" Appellee responded, "Could I get a lawyer first," and Detective Tabor stated:

> That's actually your right, I'm here just to hear your story. If you want an attorney that is your right, and that's what's on the card, O.K.? Again, you have that right, and the right to terminate at any time. So,

---

[2] This description of appellee's interview is taken from the trial court's findings of fact and is supported by the record.

if you want to talk a little bit, and if you start to feel uncomfortable about it, you can terminate at that point. If you want to ask me questions about what's going on, and I can explain to you what's going on as well. If you want an attorney, again, that's your right. Um, so you can make up your mind on that. If you want to just sit here and talk, and figure out what's going on, and I can explain that to you, you let me know what you want to do.

Appellee then asked if any of his family members had been contacted. Detective Tabor responded, "yea, I've talked to your family." Appellee asked, "like, tonight?," and Detective Tabor responded by holding out his hand with his palm facing appellee, asking "so do you want to talk a little bit right now?" Appellee answered, "just about my family members – who's coming and who's been contacted." Detective Tabor stated that he talked to appellee's "dad's sister, who was there at the house . . .", and the interview proceeded with no further mention of appellee's *Miranda* rights, getting an attorney, or terminating the interview.

During the hearing on appellee's motion to suppress, Detective Tabor testified that he read appellee the *Miranda* warnings and discussed the meaning of termination because he wanted to make sure appellee "was understanding his rights." According to Detective Tabor, appellee indicated that he understood the warnings and asked if he "could have a lawyer." Detective Tabor testified that he tried to explain that appellant could, that was his right, and to "let [Tabor] know what [he] want[ed] to do." Detective Tabor then asked appellee if he wanted to talk, and appellee "mentioned something about his family and started talking."

Detective Tabor further testified that he understood that appellee was a seventeen-year-old who was barely passing the tenth grade, but he thought appellee appeared "extremely-street smart." Detective Tabor felt comfortable that appellee understood and believed that appellee made "an intellectual waiver of his rights." Specifically, appellee said he understood his rights, he then said what he wanted to talk about, and they continued to talk "in the scope" of appellee's family, which included appellee's father. On cross-examination, however, Detective Tabor acknowledged that appellee had limited what he was willing to discuss to those family members with whom Detective Tabor had spoken.

After observing the video of appellee's custodial interview, hearing Detective Tabor's testimony, and considering the arguments of counsel, the trial court concluded, among other things, that appellee's request, "Could I get a lawyer first" was an unambiguous request for a lawyer and, read in combination with his "clearly expressed limitation that he would talk solely 'just about [his] family members – who's been contacted, and who's coming,'" appellee's "intent was not ambiguous, and it was "unreasonable for [Tabor] to have interpreted his statements as a desire to talk." The trial court further concluded that

> a comparison of [appellee's] pre- and post- *Miranda* warning conduct and statements unambiguously show an express invocation of his rights. Prior to the *Miranda* warnings being read, for eleven minutes [appellee] answered questions about his background and social history and interacted with Detective Tabor. Then, at 20:27 in the video-taped interrogation, [appellee] was given his *Miranda* warnings and [appellee] indicated he understood. Subsequently, when Detective

–8–

Tabor asked if [appellee] was willing to talk to him, [appellee] did not proceed as if he waived the *Miranda* warnings, but instead, gave in response, a statement requesting a lawyer *before* any discussion were to be had, and then clarifying he would only discuss matters 'just about my family members – who's been contacted, and who's coming.' Looking to the totality of the circumstances, comparing the pre- and post- *Miranda* conduct of [appellee], it is clear that once his *Miranda* rights were explained, he intended to and was, in fact, invoking them.

The State, however, contends that appellee did not make a clear, unambiguous invocation of counsel by asking if he could get a lawyer first. According to the State, appellee's use of the modifier "could" indicated that he was seeking clarification about his rights and, specifically, whether it was possible for him to get counsel. Detective Tabor provided the clarification appellee requested and, thereafter, appellee "chose not to take any action, instead engaging in conversation with Detective Tabor."

Texas courts routinely have concluded that a generalized question seeking to clarify a suspect's right to interrogation counsel is not a sufficiently unambiguous expression invoking the right to counsel.[3] *Jones v. State*, No. 05-18-00640-CR, 2020

---

[3] *See, e.g.*, *Dinkins v. State*, 894 S.W.2d 330, 350, 352 (Tex. 1995) (suspect asked "what a lawyer would tell him to do?"); *Robinson v. State*, 851 S.W.2d 216, 223–24 (Tex. Crim. App. 1991) ("Do I need to talk to a lawyer before I sign?"); *Lopez v. State*, Nos. 07-23-0016-CR & 07-23-00107-CR, 2023 WL 7178023, at *2 (Tex. App.—Amarillo Oct. 31, 2023, no pet.) (mem. op., not designated for publication) ("I do got a lawyer. Can I call him?"); *Thacker v. State*, No. 08-18-00085-CR, 2020 WL 1303555, at *4 (Tex. App.—El Paso Mar. 19, 2020, pet. ref'd) (not designated for publication) (Is it possible to "get a lawyer in here right now"); *State v. Munoz*, No. 08-16-00023-CR, 2018 WL 1517006, at *10–11 (Tex. App.—El Paso Mar. 28, 2018, no pet.) (mem. op., not designated for publication) ("So why can't my lawyer be present?"); *See Martinez v. State*, No. 07-11-00473-CR, 2012 WL 5342546, at *4 (Tex. App.—Amarillo Oct. 30, 2012, pet. ref'd) (mem. op., not designated for publication) ("Can I get a lawyer in here?"); *Mbugua v. State*, 312 S.W.3d 657, 665 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd) ("Can I wait until my lawyer gets here[?]"); *Reed v. State*, 227 S.W.3d 111, 113, 116 (Tex. App.—Houston [1st Dist.] 2006, pet, ref'd) ("I can get a lawyer if I want one, right?"); *Gutierrez v. State*, 150 S.W.3d 827, 832 (Tex. App.—Houston [14th Dist.] 2004, no pet.) ("Can I have [my attorney] present now?"); *Loredo v. State*, 130 S.W.3d 275,

WL 4381773, at *4 (Tex. App.—Dallas July 31, 2020, pet. ref'd) (mem. op, not designated for publication). In each of these cases, however, the courts were presented with different circumstances. Most notably, the suspects expressed a willingness to speak with police without the assistance of counsel. For example, in *Gutierrez*, 150 S.W.3d at 829, the appellant said "Can I have him present now?" after he was informed of his right to counsel. An officer advised that the appellant could have counsel, but the questioning would end and he would be returned to his cell. *Id.* The officer then asked the appellant if he wanted counsel present, and the appellant responded, "No." *Id.* Another officer assured the appellant that he could have counsel present, but the appellant stated that he would like to continue without one. *Id.* Looking at the totality of the circumstances, the court concluded that there was no violation of the appellant's Fifth Amendment rights. *Id.* at 832.

In this case, appellee clarified his request for counsel after a detective provided further explanation. Even to the extent a reasonable police officer could construe appellee's statement "Could I get a lawyer first" as asking whether it was possible for him to get a lawyer, appellee did not, as the State suggests, simply engage in further conversation with Detective Tabor. He asked if any family member had been contacted and then, in response to Detective Tabor's asking again if he wanted to "talk a little bit," he clearly limited what he would discuss to his

284–85 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd) ("Can I ask for a lawyer now?"); *Flores v. State*, 30 S.W.3d 29, 34 (Tex. App.—San Antonio 2000, pet. ref'd) ("Will you allow me to speak to my attorney before?").

"family members – who's coming and who's been contacted." Considering appellee's statements to Detective Tabor and the totality of the circumstances in which he made the statements, we conclude, as the trial court did, that he clearly and unambiguously invoked his right to interrogation counsel, subject to an express limitation regarding "family members – who's been contacted, and who's coming." *See Gobert*, 275 S.W.3d at 892–93. The interrogation, beyond that limited subject, should have ceased. *See id.* at 895. And, because appellee did not reinitiate their further communications or validly waive his right to counsel for interrogation except as to "family members – who's been contacted, and who's coming," we conclude the trial court did not abuse its discretion in granting appellee's motion to suppress the statements he made after invoking his right to counsel. *Compare Cross*, 144 S.W.3d at 529–30 (when appellant, after invoking right to counsel, reinitiated further conversation with detective, explicitly waived his right to counsel, and made written statements, the trial court properly admitted the statements). We overrule appellant's first issue.[4]

---

[4] Because we have concluded that appellee clearly and unambiguously invoked his right to interrogation counsel and he did not thereafter reinitiate communications with Detective Tabor or validly waive that right, we need not address the State's second issue regarding whether appellee's statements were made voluntarily. *See* TEX. R. APP. P. 47.1.

## Conclusion

We affirm the trial court's order granting appellee's motion to suppress.

/Craig Smith/
CRAIG SMITH
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2(b)
230033F.U05



## Court of Appeals
## Fifth District of Texas at Dallas
### JUDGMENT

THE STATE OF TEXAS, Appellant

No. 05-23-00033-CR      V.

ANTHONY SIBRIAN, Appellee

On Appeal from the Criminal District Court No. 6, Dallas County, Texas
Trial Court Cause No. F21-75068-X.
Opinion delivered by Justice Smith. Justices Molberg and Reichek participating.

Based on the Court's opinion of this date, the trial court's Order on Defendant's Motion to Suppress is **AFFIRMED**.

Judgment entered this 5th day of March, 2024.